JOHN G. GREEN, Admr., Plaintiff-Appellee, *v.* DARRELL V. WELTS *et al.,* Defendants-Appellants.

(No. 69-191;

Second District—November 30, 1970.

Howard & French, of Chicago, for appellants.

Philip H. Corboy & Associates, Richard J. Phelan, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DAVIS delivered the opinion of the court:

John G. Green, administrator of the estate of Billy J. Butler, deceased, brought this suit against Darrell V. Welts, the driver of the car in which Butler was riding at the time he was killed, and Englehardt, Inc., the contractor that was building a bridge at the place where Butler was killed.

The plaintiff alleged that Welts was guilty of wilful and wanton negligence, within the meaning of the Guest Statute (Ill. Rev. Stat. 1967, ch. 95½, par. 9—201), in the operation of his car at the time and place of the accident in question, and charged that Englehardt, Inc., was guilty of concurrent negligence in creating the appearance of a road at a place adjacent to where it had made an excavation in connection with its construction work, and that these circumstances were a proximate cause of Butler's death.

The jury returned a verdict against both of the defendants, and the defendant, Englehardt, Inc., has appealed to this court, and contends that the trial court erred in denying its motion for a directed verdict and for judgment notwithstanding the verdict.

Englehardt, Inc. contends that it was not under a duty to foresee and protect against the conduct of those, such as Welts, who proceed recklessly in the face of known danger; that the wilful and wanton conduct of Welts was not foreseeable to Englehardt, Inc.; and that Welts' conduct was a superseding cause which relieved Englehardt, Inc. of liability.

The plaintiff urges that whether or not there was a particular duty imposed upon Englehardt, Inc. which was breached by it, and whether or not this was a concurrent proximate cause of the death of the plaintiff's decedent, were questions for the jury to determine.

On the night in question, Welts drank two beers at the Acey-Ducey Club, between the hours of 10:15 and 11:30 P.M. He, Butler, and two others then drove to the Fireside Inn, where they drank until 1:30 A.M. Welts had two screwdrivers there. They then went to and remained at Mamma Mia's Restaurant until about 3:00 A.M. During this time, Welts had another screwdriver. Butler left the restaurant and went out to Welts' car to sleep.

They then decided to return to the naval base where they were stationed. Welts' car, a 1965 M.G. Midget, with bucket seats, was designed to carry two passengers. Welts, the driver of the car, was 6'3" tall and weighed 300 pounds, and occupied one bucket seat; another passenger was in the other bucket seat, and Butler and the fourth passenger were seated in the storage area immediately behind the bucket seats.

Welts proceeded east on Belvidere Road toward its intersection with Sheridan Road. He was not familiar with the route back to the base from this point. Shortly before reaching the intersection with Sheridan Road, he stopped at another intersection with no apparent difficulty. He had been told to turn right at the stop sign at Sheridan Road. As he approached Sheridan Road, he saw the stop sign and another sign which read, "North Chicago to the Right, Zion to the Left"; he did not recall seeing the sign directly above the stop sign which read, "Jct. Illinois 42" and had arrows pointing right and left. From the record, it is not clear whether he saw the other sign in the immediate area which read "End of Route 120."

As indicated, Belvidere Road ended at its "T" intersection with Sheridan Road. To the east of Sheridan Road, where Belvidere Road was in the process of being extended, Englehardt, Inc. was engaged in constructing a bridge over which Belvidere Road, in the future, would be extended to the east. There were two barricades, twelve feet wide and five feet high, on Belvidere Road on the east side of Sheridan Road. The barricades bore yellow and black arrows which indicated that approaching motorists had to turn. Slightly to the south of the barricades was a vacant area, and dirt from the construction work covered the curb at this point. About five to ten feet east of Sheridan Road and within this area was a twenty-five foot drop-off created by the removal of a house by Englehardt, Inc. There were no barricades at this point.

Welts testified that he saw several of the various signs referred to, including the stop sign; that he attempted to apply the brakes, including the emergency brake but they failed, and "the brakes went" when this happened; that he had not previously experienced any brake trouble; that his brakes had been examined two weeks prior to the accident; that he was travelling 15 mph, in second gear, at the time of the accident; that he had been told to turn right at the intersection; and that he began to turn right on Sheridan Road, but then stopped turning and proceeded into the dirt area across Sheridan Road.

He further testified that he mistook the distant lights on a railroad roundhouse as indicative of a road; that he, however, saw no road markings, tire tracks, curb lines or other indicia of a road on this dirt area over which he drove; and that he thus proceeded over the drop-off, resulting in the death of Butler.

■■ It is conceded that the barricades on that portion of what would have been the extension of Belvidere Road to the east were adequate to warn motorists not to attempt to travel that roadway. However, we believe there was a duty upon Englehardt, Inc. to properly barricade, and warn of, the steep drop-off immediately to the south of the extension of

Belvidere Road, which drop-off had been created by the construction work. This excavation created a dangerous condition in close proximity to Sheridan Road, which condition was not apparent to one unfamiliar with the area. A duty to warn exists where there is unequal knowledge, actual or constructive, of a dangerous condition, and the defendant possessed of such knowledge, knows, or should know that harm might or could occur if no warnings were given. *Kirby v. General Paving Co.* (1967), 86 Ill.App.2d 453, 457.

■■ The mere existence of a dangerous condition in itself creates no liability. The injury must have a direct and proximate connection with such dangerous condition before liability will be held to exist. If there is an independent, superseding act by a third person, which breaks the causal connection between the dangerous condition and the injury, and which itself caused the injury, the two acts are not concurrent; and the negligence in creating the dangerous condition is not then the proximate cause of the injury. *Ney v. Yellow Cab Co.* (1954), 2 Ill.2d 74, 79; *Briske v. Village of Burnham* (1942), 379 Ill. 193, 199.

■■ The difficulty is not in stating the rule, rather, it is in its application. Not every intervening act sufficiently insulates the initial wrongdoer from liability. If a resulting injury is a natural and probable result of the original negligent act or omission, and is of such a character that an ordinarily prudent person ought to have foreseen as likely to occur as a result of the original negligent act, even though the precise or exact result need not have been foreseen, then the original negligent act is a proximate cause of the resulting injury. The intervention of another subsequent negligent act will not break this causal connection if the intervening act was itself probable, or foreseeable by the first wrongdoer. *Ney v. Yellow Cab Co., supra; Neering v. I.C.R.R. Co.,* (1943), 383 Ill. 366, 38, 381.

In the case before us, we are concerned with whether or not the totality of the conduct of Welts was such that Englehardt, Inc. should, or could be charged with foreseeing such a result, or if such a result were probable. Welts testified that he started to turn right on Sheridan Road but then saw the vacant dirt area and headed there, thinking it was a roadway. It was dark; the road was wet from recent rain; Welts had been drinking; the jury might, or might not, have believed that his brakes failed; the jury might, or might not, have believed that his failure to stop and his choice of direction thereafter was the result of a foggy mind, either from the hour or from the drinking. Either through a failure of brakes or a failure to stop or slow down for other reasons, Welts could not easily or safely have negotiated the turn on Sheridan Road, and he chose an alternate path that appeared safe to him under the circum-

stances. It does not seem improbable to us that reasonable men might have foreseen that someone who missed stopping at the intersection in the darkness of the night might have mistaken the newly vacated area as a safe path to follow when unable to negotiate the turn into Sheridan Road in the normal manner.

■■■ We confess that were the original determination ours to make, we might not have found the acts of Englehardt, Inc. to have been a proximate cause of the death of Butler. But, that determination was not for us to make. The question for us is essentially where there is sufficient evidence to support the determination made by the jury. Welts might have been driving while intoxicated, and he might have run the stop light without having had a failure of his brakes, but the intervention of even a criminal act does not necessarily break the causal chain. *Ney v. Yellow Cab Co., supra* 80. In cases such as this, the intervening act is always wrongful and is not normal or reasonable conduct under the circumstances. That is the reason the question arises as to whether there is a break in the causal chain. The question of whether or not this intervening conduct was within the range of reasonable anticipation and probability is the type of factual question for the jury to determine. Questions which are composed of qualities sufficient to cause reasonable men to arrive at different results, inferences and conclusions, should not be determined as matters of law. *Ney v. Yellow Cab Co., supra* 83, 84; *Kinsch v. DiVito Const. Co., Inc.* (1964), 54 Ill.App.2d 149, 154, 155; *Marquardt v. Cernocky* (1958), 18 Ill.App.2d 135, 145, 146.

■■ The evidence in this case was sufficient to present a jury question as to the liability of Englehardt, Inc. The evidence viewed in the light most favorable to the plaintiff is not such that the verdict cannot stand. *Pedrick v. Peoria & Eastern RR. Co.* (1967), 37 Ill.2d 494, 510. It is conceivable that the response of Welts—upon observing the situation created by Englehardt, Inc. in its construction work—in believing that the vacant area offered a safe course to follow was probable under these circumstances, or that these circumstances should have been foreseen by Englehardt, Inc.

We believe that we have no alternative but to hold that the trial court did not err in refusing to grant the motion for a directed verdict or in refusing to grant the motion for judgment notwithstanding the verdict. Accordingly, the judgment is affirmed.

Judgment affirmed.