SANDRA PRZYBYLSKI, a minor, by CHESTER PRZYBYLSKI, her father and next friend, Plaintiff-Appellant, *v.* YELLOW CAB COMPANY *et al.*, Defendants-Appellees.

(No. 54709; ▪▪▪▪▪▪▪▪▪▪▪▪

First District—June 9, 1972.

Heller & Morris, and Jerome H. Torshen, Ltd., both of Chicago, (Jerome H. Torshen and Robert F. Berrey, of counsel,) for appellant.

Jesmer and Harris, of Chicago, (Julius Jesmer, Robert D. Jesmer, and Richard C. Smilgoff, of counsel,) for appellees.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

This is a personal injury action which was tried before a jury, but after the introduction of plaintiff's evidence with respect to liability, the court, on its own motion, directed a verdict in favor of defendant and denied plaintiff's post-trial motion. Plaintiff's complaint alleged that she sustained injuries as a result of the negligence of defendant common carrier, acting through its agent, a cab driver, in that the driver deviated from the ordinary route and drove the cab through an area that he knew or should have known would put plaintiff in reasonable fear of danger, causing her to flee and sustain injury in her flight.

. Plaintiff was the only witness, and the sole issue raised on appeal is whether her testimony and photographs introduced on the basis thereof, established a *prima facie* case of negligence which should have been submitted to the jury. She testified as follows:

Plaintiff, 13 years old, lived with her parents at 4811 S. Bishop. Her cousin lived at 4352 S. Mozart. On March 27, 1964, at about 6:00 or 6:30 P.M., plaintiff's mother called a Yellow Cab so that plaintiff could get to her cousin's house. Plaintiff, carrying a small train case, got into the cab alone and told the driver where she wanted to go. The driver said, "All right," started the meter, and drove off.

Plaintiff had gone from her home to her cousin's home many times before, and had usually called a Yellow Cab for transportation. Prior to the evening in question, the cab drivers would consistently drive south on Bishop to 49th Street, then west on 49th about 3 blocks to Ashland Avenue, north on Ashland to 47th Street, west on 47th about 13 blocks to California Avenue, north on California to 43rd Street, and then west on 43rd 1 block to Mozart, where her cousin lived. All these streets are well paved and well lighted.

On the evening in question, however, the cab driver, defendant's employee, took a different route. He drove south on Bishop to 49th Street, then west on 49th to Ashland Avenue, north on Ashland beyond 47th to 46th Street, and west on 46th to where Damen Avenue ends at ground level and becomes elevated on concrete pillars, curving off to the northwest. At that point, the cab driver made a right turn (north) at ground level into an area which is unpaved—"just dirt, a bunch of holes and rocks." It was cloudy and raining, and because it was 6:30 P.M., and the "road" had no street lights, it was "pretty dark." There were a few lights on the building at 46th Street, but none beyond that to the north.

Plaintiff introduced into evidence a group exhibit of 17 photographs taken of the area in question the day after the incident. The photos disclose that the area was industrial in nature, with a sort of dirt road winding between the elevated Damen Avenue to the west and some factories and large buildings to the east, with a network of railroad tracks

passing across the dirt road and leading to the doors of some of the buildings. There was no planking or ramp over the tracks for the crossing of automobiles.

Plaintiff told the driver that she thought he was going the wrong way, but he replied that he was taking a short cut that cab drivers took, and he proceeded to drive north. Plaintiff could see no outlet, just a dead end, and she told the cab driver that if he did not stop, she would jump out. The cab driver continued to drive, going slowly over the bumps. While the cab was moving, plaintiff jumped out and ran back toward 46th Street. At the time plaintiff jumped out of the cab, she said she felt it was "like a nightmare. It was just scarey." Plaintiff hurt her foot when she jumped from the cab, and while running away from the cab, she tripped over some railroad tracks which were between six and eight inches high, and suffered other injuries. She turned and looked back at the cab, but it was still going north. The driver did not chase her. She walked to 46th Street and Winchester and stopped for a while in a gangway between two houses. She waited there and hid until after a cab went by. She couldn't be sure it was the cab she had been in but it came from the direction she had come. Then she walked to 47th Street and took a bus to her cousin's house. She had not paid the cab fare.

Once at her cousin's house, plaintiff told her cousin what had occurred. Her cousin called plaintiff's mother, who, in turn, notified the police. The next day, plaintiff went to the hospital for X-rays because her foot was swollen and painful. She wore a cast on her foot for five or six weeks.

Plaintiff having concluded her case as to liability, the court, on its own motion, stated to the jury:

"At this time, I declare that the plaintiff has failed in his responsibility to provide a prima facie case. By so declaring, I say to you the jury that there's no issue of fact for you to decide, because it is the opinion of this Judge that he has failed to relate and connect by proximate cause any negligence directly or indirectly to the Yellow Cab Company, the only Defendant we have in this case."

■■ A directed verdict in this case is not permissible unless all of the evidence, viewed in its aspects most favorable to plaintiff, so overwhelmingly favors defendant, that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, 513—514.) It is our opinion that this is not an appropriate case for such a directed verdict as the evidence does not so favor defendant that a verdict for plaintiff could not stand, but rather, we believe, the evidence presented by plaintiff was sufficient to raise issues, the resolution of which should have been left to the jury.

■■■ Proof of negligence consists of showing a duty to the person injured, a breach of that duty, and an injury proximately resulting from that breach. (*Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 382, 50 N.E.2d 497, 504.) In the instant case, there is no question but that defendant owed a duty to plaintiff. As a common carrier, it owed plaintiff the duty to use the highest degree of care consistent with the mode of conveyance and the practical operation thereof, and was responsible for any departure from that high standard, against which the *Pedrick* rule, *supra*, is to be measured. *Holderness v. Checker Taxi Co.*, 105 Ill. App.2d 251, 254, 245 N.E.2d 32, 34.

■■ Enough evidence was presented which, if believed by the jury, could prove that defendant's driver was at least negligent in placing plaintiff in a situation which reasonably caused her to experience strong anxiety and fear; and that the driver's actions were the proximate cause of plaintiff's injuries because he knew or should have known that plaintiff's anticipation of danger could or would cause her to react in the way she did, resulting in injury to herself.

When the cab driver turned off 47th Street, he pulled onto a bumpy dirt area which, as depicted in the exhibits, could scarcely be called a road. They drove between large factories to the east and concrete supportive pillars to the west. The "road" passed across several sets of exposed railroad tracks which led into the factories. It was raining and "pretty dark," as there were no street lights. Plaintiff's reaction to being in this area was that "it was like a nightmare * * * just scarey." She could see no way out and believed the road to be a dead end. Plaintiff told the driver that she thought he was going the wrong way, but he continued to drive further into the area, saying only that he was taking a short cut.

We take judicial notice of the fact that the route being taken was not a "short cut" as measured by distance, and it certainly was not a short cut as measured by time, in view of the slow speed which was unavoidable over the terrain in question.

Plaintiff's concern that there was no way out to 43rd Street in the direction they were headed could also have been well-founded. From the exhibits, together with plaintiff's testimony, it appears that the area to the north would have given every reasonable indication of having been impassable to vehicular traffic due to the general condition of the area, as well as to the large network of spur tracks, loading docks, etc.

From the facts in evidence, a jury could reasonably have found that defendant was negligent in taking plaintiff into the area in question. Bearing in mind that plaintiff was only 13 years old, she could reasonably have believed that she was in a dangerous situation. Even though

the driver did not talk to her or attempt to touch her does not mean that he should not have expected that a girl of her age, mental capacity and experience would feel threatened.

■■ There is also evidence which, if believed by the jury, could prove that defendant's actions were the proximate cause of plaintiff's injuries. A negligent act is the proximate cause of a naturally resulting injury if such injury is of a character which an ordinarily prudent person could foresee as being likely to occur. (*Ney v. Yellow Cab Co.*, 2 Ill.2d 74, 79, 117 N.E.2d 74, 78.) The determination of the proximate cause of an injury is ordinarily a question of fact to be resolved by a jury after considering all of the evidence. *Neering v. I.C.R.R. Co.*, 383 Ill. 366, 381, 50 N.E.2d 497, 504.

When plaintiff jumped out of the cab, she ran south, away from the cab, and tripped over some railroad tracks which the cab had crossed and which protruded some six to eight inches above the level of the road. Her fall and injury, although not occurring while she was a passenger in the cab, did occur while she was running from what she believed was a perilous situation. Just as her flight from the cab could be found to be a natural and probable reaction to an apparently dangerous situation, the jury could reasonably have believed that the injury suffered was a natural and foreseeable result of a blind flight by a 13-year-old girl over a dark and dangerous path for traverse by a pedestrian.

Issues were raised, therefore, which should have been sent to the jury, and the trial court erred in directing a verdict for defendant. The judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

LORENZ, P. J., and DRUCKER, J., concur.