MARY D. BROOKS, Adm'r of the Estate of Paul L. Brooks, Deceased, Plaintiff-Appellee, *v.* JAY F. LUNDEEN *et al.*, Defendants.—(THE CITY OF ZION *et al.*, Defendants-Appellants; THE CITY OF WAUKEGAN *et al.*, Defendants-Appellees.)

Second District   No. 75-506

Opinion filed May 26, 1977.

2

John T. Kennedy, of Querrey, Harrow, Gulanick & Kennedy, of Chicago, for appellants.

William J. Harte, of Chicago, and May, Decker & Assoc. and Hall, Meyer, Fisher, Holmberg, Snook & May, both of Waukegan, for appellee Mary D. Brooks.

Alfred W. Lewis, of Waukegan, for appellee City of Waukegan.

Mr. JUSTICE NASH delivered the opinion of the court:
This action was brought to recover damages for wrongful death based

on theories of negligence and wilful and wanton conduct of defendants. The jury returned a general verdict for plaintiff for $300,000 and responded negatively to a special interrogatory directed to any wilful and wanton conduct of appealing defendants.

Plaintiff-appellee, Mary D. Brooks, administrator of the Estate of Paul L. Brooks, deceased, commenced this cause against defendants, Jay F. Lundeen, City of Zion, Illinois. E. Ray Nichols, Ronald Clark, City of Waukegan, Illinois, and William Uimari. We are concerned on this appeal only with the judgment entered on the verdict against the defendant-appellants, City of Zion, Nichols and Clark.

The trial court denied defendants' motion for judgment n.o.v. and for new trial. The defendants here contend: (1) that there was no evidence they were negligent; (2) that their conduct was not a proximate cause of Brooks' death; (3) that the form of verdict was improper; (4) that the trial court erred in refusing to allow an exhibit to go to the jury during deliberations, in the language of the issues instruction, in allowing prejudicial argument and in not granting a new trial because of the alleged concealment of plaintiff's identity.

The collision which caused the death of plaintiff's decedent, Paul L. Brooks, occurred at 2:30 a.m. on November 7, 1970, near the intersection of Lewis Avenue and Beach Road north of the City of Waukegan in Lake County, Illinois. Defendants Nichols and Clark, who were police officers of the City of Zion, had set up a roadblock on Lewis Avenue with their squad car seeking to intercept the approaching northbound car being driven by Jay F. Lundeen on Lewis Avenue. Lundeen had earlier been observed by a police officer in the nearby City of Waukegan driving with his bright lights on and drifting towards the opposite lane of traffic. The Waukegan officer turned to follow Lundeen's car and it then sped up, ran a red light, and turned north on Lewis Avenue at high speed. The officer radioed he had a possible chase and other squads of Waukegan and Illinois State Police joined the pursuit. The officers testified that Lundeen traveled north on Lewis Avenue at speeds of 85 to 100 miles per hour and they were unable to catch up with him.

John Bucholtz, who was the police radio officer for the nearby City of Zion, received a communication from the Waukegan operation stating, "We have a chase going north on Lewis Avenue, will you assist?" Bucholtz then radioed defendants Nichols and Clark in their squad car informing them there was a high speed chase in excess of 100 m.p.h. going north on Lewis Avenue and instructed them to assist the Waukegan officers.

Nichols and Clark drove to Lewis Avenue and stopped their car just north of the intersecting Beach Road intending to set up a roadblock at that point. Paul Brooks drove up behind and from the north of the squad car stopping his vehicle about 40 feet north of it opposite a school

playground and driveway. Nichols, having decided to move south of Beach Road to establish the roadblock, let Clark out of his car at Beach Road and instructed him to get the Brooks' vehicle to the shoulder of the road, out of the way and into a place of safety. Nichols then drove 30 to 40 yards south of Beach Road and positioned the squad car generally in an east-west direction on Lewis Avenue. Both Nichols and Clark testified their car was parked only on the western half of the 22-foot-wide blacktop roadway with its revolving roof lights on. Nichols testified that as he pulled the squad car into position he saw the Lundeen car approaching at 80 to 90 m.p.h., driving in the center of the road using both lanes, and it passed around the squad car to the east partially on the shoulder of the road.

Defendant Clark, a part-time Zion officer, had heard the radio transmissions that a car was coming north on Lewis Avenue at 100 mp.h. When dropped off by Nichols on Beach Road, he observed Brooks moving up in his car and directed him to park on the west shoulder of the road at a place about 60 feet south of the intersection. He did not inform Brooks of the approaching Lundeen car or the purpose of the roadblock. Clark then walked south toward the squad car and after going a short distance saw Lundeen's car coming around it at 90 to 100 m.p.h. traveling in a northwesterly direction. It collided head-on with Brooks' parked vehicle, killing Brooks.

At the time of the collision it was dark and misty and the blacktop was wet and slippery. Lewis Avenue was generally straight and level for about one-half mile south of the roadblock and Beach Road was a public highway running east and west about 60 feet north of the place Clark had directed Brooks to park; there was a school playground area on the northwest corner of the intersection. Neither Nichols or Clark had any previous experience, training or instruction in setting up a roadblock.

Defendants contend first that no evidence of negligence was shown in the establishment of the roadblock or in their positioning of Brooks' car near it. They assert that roadblocks are a subject matter beyond the common knowledge of an ordinary person and that proof of negligence, in that event, requires expert testimony to establish the necessary standards of care and none was produced, citing 65A CJ.S. *Negligence* §243(2) (1966)—"Expert Evidence."

■■■ The paragraph referred to by defendants also goes on to state "* * * but the introduction of expert evidence is not necessary where the question relates to matters which are of common experience, observation, or knowledge." (65A C.J.S. *Negligence* §243(2), at 671 (1966).) We believe that is the case here. The conduct of defendants in setting up the roadblock and positioning Brooks' car as they did was not technically difficult to understand and the jury would have no need for an expert

evaluation of what defendants did or did not do in this circumstance. No specific authority is cited in support of the argument that the standard of care required of defendants can only be grounded on expert testimony, as must the duty of a physician, and we believe none exists.

Defendants also contend in this regard that the testimony was that any decision to employ a roadblock rests in the discretion of the officer on the scene. They assert there was no evidence defendants abused such discretion and thus no basis for a finding of negligence.

Joseph Kostur, District Safety Claims Administrator for the State of Illinois, Department of Transportation Safety, John Samuelian, police shift commander of the City of Zion and George Pasenelli, Chief of Police of Waukegan, testified to the factors which must be considered by an officer in making a roadblock decision. The witnesses were each qualified to testify as they did and stated generally that weather conditions, type of road, visibility, conflicting traffic, the nature of the violation and the safety of citizens were among the considerations going to an officer's decision. Samuelian testified that a fugitive's speed of 100 m.p.h. on a slippery road would suggest a roadblock not be used to intercept him. Pasenelli testified, in response to a hypothetical question, that it was his opinion a citizen's vehicle should not be held in the roadblock area but ordered away from the scene in these circumstances. These witnesses did also testify that the decision to employ a roadblock or not rested with the officers on the scene.

■■ We agree that defendants made a discretionary decision in this case to employ a roadblock to intercept Lundeen's car. The question of whether they in so doing had a duty to plaintiff's decedent and negligently breached that duty remains and may not be resolved on the basis of whether or not defendants abused their discretion.

The complaint alleged that the death of plaintiff's decedent was proximately caused by the negligence of defendants in setting up the roadblock in these circumstances, in placing decedent in an unsafe place within the roadblock area and in failing to warn him of a known danger.

Proof of negligence consists of evidence showing a duty to the injured party, a breach of that duty and an injury proximately resulting from the breach. (*Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 382, 50 N.E.2d 497, 504.) It has been held that a police officer acting in the performance of his duties in circumstances similar to those seen in this case owes a duty to exercise ordinary care for the safety of others in carrying out his responsibilities. (*Sundin v. Hughes* (1969), 107 Ill. App. 2d 195, 246 N.E.2d 100; *Creamer v. Rude* (1962), 37 Ill. App. 2d 148, 153-54, 185 N.E.2d 345; *Moore v. Cook* (1959), 22 Ill. App. 2d 48, 159 N.E.2d 496.) The jury was so instructed without objection in this case.

■■ An affirmative duty to warn is an obligation which arises where

there is such a relationship between the parties as to require that a legal obligation of due care be imposed on one for the benefit of the other (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535) and when a known dangerous or unsafe condition exists which is not apparent to the other party. As stated in *Green v. Welts* (1970), 130 Ill. App. 2d 600, 604, 265 N.E.2d 188, 190:

> "A duty to warn exists where there is unequal knowledge, actual or constructive, of a dangerous condition, and the defendant possessed of such knowledge, knows, or should know that harm might or could occur if no warnings were given. *Kirby v. General Paving Co.* (1967), 86 Ill. App. 2d 453, 457."

There was evidence submitted to the jury that defendants placed their squad car across a portion of a narrow, slippery road in the path of a car they knew was approaching at very high speed. When Brooks happened on the scene he was not directed away from the roadblock area but, rather, was held there in a place the jury might consider to be one of potential danger. Brooks did not know and was not informed that the Lundeen car was being pursued in his direction by officers; given a choice he may well have gone further off the road into the school yard, turned off on Beach Road or otherwise removed himself from the scene.

■■ ■ Whether the risks imposed on plaintiff's decedent by defendants' conduct were unreasonable risks in these circumstances, and whether defendants breached their duty of exercising ordinary care for Brooks' safety, were factual determinations for the jury. (*Garrett v. National Tea Co.* (1958), 12 Ill. 2d 567, 147 N.E.2d 367.) We cannot conclude that when the evidence is viewed in its aspect most favorable to plaintiff it so overwhelmingly favors defendants that no contrary verdict based thereon could stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) It was not error for the trial court, therefore, to deny defendants motion for judgment *n.o.v.*

Defendants further contend that the sole proximate cause of Brooks' death was Lundeen's conduct in speeding along Lewis Avenue and past the roadblock into Brooks' parked vehicle. They argue that their conduct only brought about the occasion or condition for the occurrence and was not the cause of the consequences shown here. Defendants rely on *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617, to support their conclusion. That court refers to section 435 (2) of the Restatement (Second) of Torts (1965), which provides:

> "The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." (56 Ill. 2d 372, 376, 308 N.E.2d 617, 619.)

The court in *Cunis* held on this principle that no liability attached to a municipality which allowed its drain pipe to protrude from the ground next to a road after a car accident occurred nearby and plaintiff was thrown from his car onto the pipe.

We do not find the highly extraordinary cause and effect described in *Cunis* to be analogous to this case, but do find applicable the rule stated in *Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 100, 311 N.E.2d 128, 132:

> "The rule, long established in this jurisdiction is that '* * * in order to render the party liable for his negligent act such act must be so related to the injury as to be the proximate cause thereof. The intervention of independent, concurrent or intervening forces will not break the causal connection if the intervention of such independent force was itself probable and foreseeable.' *Wintersteen v. National Cooperage and Woodenware Co.*, 361 Ill. 95, at 104."

The proximate cause issue presented to the jury in this case was whether the defendants should reasonably have foreseen that death or injury to plaintiff's decedent would be a natural and probable result of their conduct in placing the squad car across the oncoming traffic and holding Brooks in that area without warning him of the approaching, speeding car. If an ordinarily prudent person ought to have foreseen that Lundeen, in attempting to escape from the pursuing police, at high speed, was likely to be diverted by the roadblock or to attempt to swerve around it and thereby lose control and strike Brooks' nearby vehicle, then the original negligent acts or omissions of defendants remain as a proximate cause of Brooks' death. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 117 N.E.2d 74; *Przybylski v. Yellow Cab Co.* (1972), 6 Ill. App. 3d 243, 285 N.E.2d 506; *Green v. Welts* (1970), 130 Ill. App. 2d 600, 265 N.E.2d 188.) The determination of the proximate cause of an injury and its element of foreseeability is ordinarily a question of fact for the jury. (*Ray v. Cock Robin, Inc.* (1974), 57 Ill. 2d 19, 310 N.E.2d 9.) Under the *Pedrick* test, the trial court correctly refused to enter judgment *n.o.v.* on this issue.

Defendants contend they are entitled to a new trial because the trial court erred in denying their motion that separate verdicts be submitted to the jury on the negligence and wilful and wanton misconduct counts of the complaint. The Civil Practice Act provides that the court shall, on the motion of either party, direct the jury to find a separate verdict on each demand where there is more than one count based on different demands upon which a separate recovery of damages might be had by a party. Ill. Rev. Stat. 1975, ch. 110, par. 68(3).

At the conference on instructions the trial court expressed concern that confusion of the jury might result in view of the many verdict forms submitted to them relating to the issues between plaintiff and the six trial

defendants and sought to reduce that confusion by leaving the resolution of the wilful and wanton misconduct claims to the special interrogatory on that issue given by the court at the request of these defendants. Over the objections of defendants only a general verdict was, therefore, submitted to the jury.

■■ While we generally agree with defendants that these counts are of the nature suggested by section 68(3) as requiring separate verdicts (*Palsir v. McCorkle* (1966), 70 Ill. App. 2d 425, 216 N.E.2d 682; *Madison v. Wigal* (1958), 18 Ill. App. 2d 564, 153 N.E.2d 90), we find that no prejudice resulted to defendants from the manner in which the case was submitted to the jury. *Beccue v. Rockford Park District* (1968), 94 Ill. App. 2d 179, 236 N.E.2d 105.

■■ Plaintiff did not request punitive damages under the wilful counts and damages sought were essentially the same under all counts. Clearly, had there been a verdict including punitive damages or had not the negative response to the special interrogatory submitted settled the issue of wilful misconduct, then the general verdict alone would have been insufficient. It would not have been possible, in that event, to ascertain the basis for the verdict of the jury and any damages it might allow. (*Crum v. Gulf Oil Corp.* (1973), 12 Ill. App. 3d 988, 299 N.E.2d 820; *Eggimann v. Wise* (1963), 41 Ill. App. 2d 471, 191 N.E.2d 425.) In the present case, however, the parties were left with no uncertainty and a new trial is not required.

■■ Defendants also assert the court erred in refusing to allow one of plaintiff's exhibits to go to the jury during its deliberations. This was a training manual for officers entitled "Roadblocks" and its relevant portions had been presented to the jury at great length through extensive examination of the witnesses by both sides. We find no abuse of the court's discretion in its determination the exhibit should not be taken with the jury. *Kaspar v. Clinton-Jackson Corp.* (1969), 118 Ill. App. 2d 364, 254 N.E.2d 826; *Fahrforth v. Kwiatkowski* (1967), 79 Ill. App. 2d 300, 224 N.E.2d 641.

It is next contended by defendants that the instruction defining the issues of negligence and the argument of plaintiff's counsel on that subject were not based upon the evidence. They point to the allegations of negligence in the complaint, as paraphrased in the instruction, that "defendants parked their vehicle in the path of a known speeding vehicle" and that "defendants ordered plaintiff's decedent to park his vehicle within a roadblock area" as being unsupported by the evidence.

■■ We see no prejudice to defendants resulting from the phraseology of this instruction. It generally states the issues raised by the pleadings and there was sufficient evidence produced so that the jury was entitled to consider them. By this instruction the court informed the jury

what the contentions of the parties were and it was for the jury, then, to determine the conclusions to be drawn from the evidence. There was no error in the giving of the issues instruction.

Defendants object to a portion of plaintiff's argument they consider not to be based on the evidence, *i.e.*, that the roadblock covered both lanes of traffic and that the Zion squad car was 18 feet long and was parked in an east-west direction across the road causing Lundeen's car to travel around it to the west, striking Brooks' car.

■■ The facts of this case, as shown by the direct and circumstantial evidence produced by the parties, and their arguments therefrom, were strenuously contested. Each party did draw different conclusions and inferences from the evidence. We have examined the record carefully and find no prejudicial error in plaintiff's argument and no abuse of the court's discretion in ruling upon the objections to that argument. *Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249; *Saputo v. Fatla* (1975), 25 Ill. App. 3d 775, 324 N.E.2d 34; *Reinmueller v. Chicago Motor Coach Co.* (1950), 341 Ill. App. 178, 93 N.E.2d 120.

■■ Defendants' final contention is that they are entitled to a new trial because, they submit, plaintiff's true identity was Mrs. Raleigh Galigan or Galgan, not Mary D. Brooks, as she stated to the jury. *Watson v. Fischbach* (1973), 54 Ill. 2d 498, 301 N.E.2d 303, does hold that prospective jurors in a wrongful death action may be informed by the judge that a plaintiff has remarried. The limited purpose and relevance of such disclosure, where a remarriage has in fact occurred, is to assure that jurors will not be accepted who may be acquainted with a plaintiff's new spouse.

■■ The record in this case shows only that plaintiff testified as Mary D. Brooks on April 24, 1975, and that in an amended motion for new trial defendants alleged that in a conversation between an insurance agent and defendants' counsel occurring on June 27, 1975, the agent said plaintiff had been remarried to R. Galigan or Galgan, who was listed in the Zion telephone directory at plaintiff's given address.

We believe the trial court correctly denied defendants' motion. Neither the *voir dire* nor the hearing on this motion was included in the report of proceedings and is not a part of the record of this appeal. There is no suggestion the name or person of the alleged new spouse was made known to the jury at any time, and we cannot assume on this record that plaintiff, if remarried, did so prior to trial of this case. We find no evidence of prejudice to defendants in this regard.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

RECHENMACHER, P. J., and BOYLE, J., concur.