THIRD DIVISION
 February 5, 1997

No. 1-94-3662

JAMES T. MORAN, )
 )
 Plaintiff-Appellant, )
 )
 v. )
 )
CITY OF CHICAGO, a municipal )
corporation, and SGT. PATRICK GROGAN )
(a/k/a BROGAN), Star No. 812, )
individually and in his capacity as a ) APPEAL FROM THE
police officer of the City of Chicago, ) CIRCUIT COURT OF
JOHN DOE, I, individually and in his ) COOK COUNTY.
capacity as a police officer of the )
City of Chicago, JOHN DOE, II, )
individually and in his capacity as a )
police officer of the City of Chicago, )
JOHN DOE, III, individually and in his )
capacity as a police officer of the )
City of Chicago, JOHN DOE, IV, )
individually and in his capacity as a )
police officer of the City of Chicago, )
JOHN DOE, V, individually and in his ) HONORABLE KENNETH
capacity as a police officer of the ) L. GILLIS, JUDGE
City of Chicago, ) PRESIDING.
 )
 Defendants-Appellees, )
 )
 and )
 )
LEROY BAUMAN, individually and in his )
capacity as a police officer of the )
City of Chicago, Star No. 7613, )
 )
 Defendant. )

 JUSTICE GORDON DELIVERED THE OPINION OF THE COURT:

 Plaintiff, James T. Moran, brings this appeal pursuant to
Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), from the
dismissal of counts IV through VI of his complaint against
defendants, Sergeant Patrick Brogan, the City of Chicago, and
five John Doe police officers. Plaintiff's complaint sought to
recover for injuries he sustained when Leroy Bauman attacked him
while he was being questioned by Brogan and the John Doe officers
after they had broken up a physical altercation between the
plaintiff and Bauman. Count IV alleged that the defendants owed
the plaintiff a special duty and that they had acted willfully
and wantonly in failing to protect the plaintiff from Bauman. 
Counts V and VI alleged that Brogan and the John Doe defendants
had deprived the plaintiff of his federal civil rights,
specifically, liberty/personal security and access to the courts,
guaranteed under 42 U.S.C.  1983 (1990). Pursuant to section 2-
619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West
1994)), Brogan and the City of Chicago moved to dismiss
plaintiff's tort claims encompassed in count IV based upon the
immunity provisions of sections 4-102, 2-204, 2-202, 2-109 of
the Local Governmental and Governmental Employees Tort Immunity
Act (the Tort Immunity Act) (745 ILCS 10/4-102, 2-204, 2-202, 2-
109 (West 1994)). In a separate motion, Brogan moved to dismiss
counts V and VI pursuant to section 2-615 of the Code of Civil
Procedure (735 ILCS 5/2-615 (West 1994)) for failure to state a
cause of action. The trial court granted both motions and
dismissed counts IV, V and VI.
 The issues raised on appeal are: (1) whether count IV of
the complaint alleged sufficient facts to establish that Brogan
and the City of Chicago (hereinafter referred to as the
"defendants") owed the plaintiff a special duty; (2) whether
count IV alleged sufficient facts of willful and wanton conduct;
(3) whether count V stated a cause of action for violation of
civil rights under 42 U.S.C. 1983 based upon allegations that
the defendants deprived the plaintiff of his liberty and personal
security rights; and (4) whether count VI stated a cause of
action for violation of 42 U.S.C. 1983 based upon allegations
that the plaintiff was denied his constitutional right of access
to the courts.
 A motion to dismiss a complaint pursuant to section 2-615 of
the Code of Civil Procedure (735 ILCS 5/2-615 (West 1994))
attacks the legal sufficiency of the complaint, whereas a section
2-619 motion raises defects, defenses or other affirmative matter
which appear on the face of the complaint or are established by
external submissions which act to defeat the plaintiff's claim
(735 ILCS 5/2-619 (West 1994)). See Illinois Graphics Co. v.
Nickum, 159 Ill. 2d 469, 639 N.E.2d 1282 (1994); Lawson v. City
of Chicago, 278 Ill. App. 3d 628, 662 N.E.2d 1377 (1996). While
statutory immunity is affirmative matter that can be raised in a
section 2-619 motion, it is better suited as support for a
section 2-615 pleading-based motion that challenges the legal
sufficiency of the plaintiff's complaint. See Calloway v.
Kinkelaar, 168 Ill. 2d 312, 331-32, 659 N.E.2d 1322, 1331-32
(1995) (Freeman, J., specially concurring); Lawson, 278 Ill. App.
3d 628, 662 N.E.2d 1377. Here, since the defendants' section 2-
619 motion did not raise any new factual matter, the question on
appeal is the same whether defendants' motion is considered to be
a section 2-615 or a section 2-619 motion; that is, whether under
the allegations as pleaded in the plaintiff's complaint the
defendants were immune from liability as a matter of law. 
Calloway, 168 Ill. 2d at 332, 659 N.E.2d at 1332. See Lawson,
278 Ill. App. 3d 628, 662 N.E.2d 1377; Thames v. Board of
Education, 269 Ill. App. 3d 210, 645 N.E.2d 445 (1994).
 I. Special Duty 
 Pursuant to the common law public duty rule, municipalities
and law enforcement officials owe no duty to protect individual
citizens. Leone v. City of Chicago, 156 Ill. 2d 33, 619 N.E.2d
119 (1993); Burdinie v. Village of Glendale Heights, 139 Ill. 2d
501, 565 N.E.2d 654 (1990) overruled in part on other grounds,
McCuen v. Peoria Park District, 163 Ill. 2d 125, 643 N.E.2d 778
(1994). Similarly, under the Tort Immunity Act, a public
employee is not liable for acts or omissions occurring within the
scope of his employment (745 ILCS 10/2-204 (West 1994)); and the
public entity is not liable when its employee is not liable (745
ILCS 10/2-109 (West 1994)). With respect to police protection,
the Tort Immunity Act provides that neither a public entity nor
its employee is liable for failure to provide police protection
service or adequate police protection service or for failure to
prevent the commission of crime. 745 ILCS 10/4-102 (West 1994). 
However, with respect to the latter, the Act further provides
that, while police officers are not liable for injuries caused by
acts or omissions in the execution and enforcement of the law,
they are liable if their conduct is willful and wanton. 745 ILCS
10/2-202 (West 1994).
 The special duty doctrine is an exception to the common law
public duty rule and to the Tort Immunity Act. Calloway, 168
Ill. 2d 312, 659 N.E.2d 1322; Leone, 156 Ill. 2d 33, 619 N.E.2d
119. But see Calloway, 168 Ill. 2d at 331, 659 N.E.2d at 1331
(Freeman, J., specially concurring); Leone, 156 Ill. 2d at 43,
619 N.E.2d at 124 (Bilandic, J., dissenting); and Leone, 156 Ill.
2d at 49, 619 N.E.2d at 127 (Heiple, J., dissenting) (challenging
notion that special duty doctrine is exception to Tort Immunity
Act). In accordance with that exception, if circumstances arise
whereby care or custody is exercised over a specific individual
by a municipality or public official so that an affirmative duty
to exercise care on behalf of that individual comes into
existence, the failure to carry out that duty in a non-negligent
manner is actionable. Thames, 269 Ill. App. 3d 210, 645 N.E.2d
445. To invoke this special duty exception, the plaintiff must
prove the following four elements: (1) unique awareness of a
particular danger or risk to which the plaintiff was exposed; (2)
specific acts or omissions; (3) specific acts that are
affirmative or willful in nature; and (4) injury to the plaintiff
while under the direct and immediate control of municipal
employees or agents. E.g., Doe v. Calumet City, 161 Ill. 2d 374,
641 N.E.2d 498 (1994); Leone, 156 Ill. 2d 33, 619 N.E.2d 119;
Burdinie, 139 Ill. 2d 501, 565 N.E.2d 654; Lawson, 278 Ill. App.
3d 628, 662 N.E.2d 1377. Here, as will be discussed below,
plaintiff's complaint does not allege sufficient facts to
establish the fourth element of the special duty exception,
namely, direct and immediate control.
 Generally, the control element is established by allegations
that the defendants initiated the circumstances which created the
dangerous condition or that the defendants called the plaintiff
into a position of peril. Doe, 161 Ill. 2d 374, 641 N.E.2d 498;
Burdinie, 139 Ill. 2d 501, 565 N.E.2d 654. The control element
has been found to exist where police officers ordered plaintiffs
to move to or took them to certain areas of danger. E.g., Leone,
156 Ill. 2d 33, 619 N.E.2d 119 (ordering motorist to halt in
traffic and directing her to stand in the street); Brooks v.
Lundeen, 49 Ill. App. 3d 1, 364 N.E.2d 423 (1977) (ordering
motorist to park next to road block when speeding motorist
approaching); Gardner, 71 Ill. App. 2d 373, 219 N.E.2d 147
(bringing witness to side of highway to identify four suspects).
 In the instant case, plaintiff's complaint alleged that at
approximately 3:45 a.m., on August 9, 1989, Leroy Bauman became
involved in a physical altercation with a Chicago police officer
in a tavern called the Whistle Stop Inn; that the plaintiff, who
was an off-duty Cook County deputy sheriff, entered the Whistle
Stop Inn to assist the police officer; that physical contact was
made between Bauman and the plaintiff; and that the altercation
continued on the public sidewalk outside the inn. The complaint
further alleged that Sergeant Brogan and the John Doe defendants
arrived, intervened, separated plaintiff and Bauman, and
"surrounded and detained" the plaintiff to investigate and
determine whether to arrest the plaintiff for battery. The
complaint stated that, while the plaintiff was being
"interrogated," Bauman shouted and screamed, demanded that the
plaintiff be arrested, threatened to physically attack the
plaintiff, and thereupon violently punched him in the face and
knocked him to the ground causing injuries to him.
 Count IV of plaintiff's complaint purports to raise a
special duty and willful and wanton conduct. It alleges that the
City, Brogan and the John Doe defendants had actual knowledge
that Bauman had violent propensities, that Bauman was
intoxicated, and that Bauman was screaming and threatening the
plaintiff with physical harm. It further alleges that, while
possessed of that knowledge, the defendants "detained and
interrogated the Plaintiff in such proximity to *** Bauman that
they put the Plaintiff in a position where he was unable to
visually monitor Bauman's conduct and where the Plaintiff was
unable to physically defend himself from the previously
threatened attacks of Bauman." It further alleged that the
defendants acted willfully and wantonly by failing to take the
necessary steps to physically restrain Bauman and to prevent him
from gaining access to the plaintiff and, as a result of those
failures, the plaintiff sustained injuries.
 The plaintiff argues that his allegations establish that the
defendants had direct and immediate control based on the fact
that they surrounded, detained and questioned him. The
defendants urge, on the other hand, that the control element is
absent because the plaintiff has not alleged that they initiated
the circumstances which created the condition of peril. They
argue that the condition of peril, namely, the physical
altercation and hostility between Bauman and the plaintiff,
existed before they arrived on the scene. See Doe, 161 Ill. 2d
374, 641 N.E.2d 498 (control element absent where condition of
peril existed at the time the police arrived).
 In its present posture, the plaintiff's complaint does not
allege sufficient facts showing that the defendants initiated the
circumstances which created the dangerous condition or that they
called the plaintiff into a position of peril. Here, as in Doe,
the defendants arrived on the scene and found the plaintiff and
Bauman engaged in a physical altercation. That altercation,
which was the dangerous condition, existed when the defendants
arrived. The plaintiff does not allege that the defendants
changed that condition so as to create a new condition of danger.
The plaintiff also does not allege that he was ordered to stand
at the specific location wherein the subsequent attack by Bauman
occurred or that he was denied all freedom of movement within the
locale of the scene of the occurrence. Allegations that the
defendants "detained," "surrounded" and "interrogated" the
plaintiff do not denote the restraint of all movement. All that
can be gleaned from these words is that the officers stopped the
plaintiff at the scene of the altercation so that they could
perform their investigatory function. Those words do not denote
that the police ordered or compelled the plaintiff to stand in
the specific spot wherein the threat of danger existed. Cf.
Anthony v. City of Chicago, 168 Ill. App. 3d 733, 523 N.E.2d 22
(1988) (police officer instructed and directed plaintiff to aid
defendant fire fighters in combatting fire); Gardner, 71 Ill.
App. 2d 373, 219 N.E.2d 147 (police officers took plaintiff to
side of highway to identify suspects); Brooks v. Lundeen, 49 Ill.
App. 3d 1, 364 N.E.2d 423 (1977) (police officers set up
roadblock and directed decedent motorist to an unsafe place
within the roadblock). Under the circumstances of this case, to
invoke the special duty exception would impose a special duty
upon police officers to protect every bystander from whom the
officers elicit information at the scene of an investigation even
though the police did not create the dangerous condition or
summon the bystander into it.
 It is the plaintiff's failure to allege facts showing that
he was placed in a position of peril by the defendants that
distinguishes this case from Leone, 156 Ill. 2d 33, 619 N.E.2d
119, the case upon which the plaintiff relies. In Leone, the
police officer created the condition of peril by directing the
plaintiff/motorist to an area between his car and hers, exposing
her to the risk of serious injury from passing vehicular traffic. 
Here, the defendants did not create the condition of peril; they
merely pursued their investigation at the scene where that
condition already existed. Doe, 161 Ill. 2d 374, 641 N.E.2d 498. 
While the complaint alleges that the police officers interrupted
the altercation between the plaintiff and his assailant,
defendant Bauman, the complaint falls short of alleging that the
officer ordered or compelled the plaintiff to stand in the
particular spot which exposed him to the risk of the assault. 
Moreover, we also note that in Leone the police officer was found
to have a "heightened awareness" of the nature of the hazard
which he caused the plaintiff to encounter. Leone, 235 Ill. App.
3d at 599, 601 N.E.2d at 945. Here, given the fact that the
plaintiff engaged in the altercation with Bauman, there is no
indication that the police had any "heightened" or disparate
knowledge as to the nature and scope of the risk. See Burdinie,
139 Ill. 2d 501, 565 N.E.2d 654. Under these circumstances, the
element of direct and immediate control cannot be established;
and the plaintiff has failed to sufficiently plead the existence
of a special duty.
 II. Willful and Wanton Allegations
 In addition to seeking to recover on the basis of a special
duty, count IV of the plaintiff's complaint seeks to recover on
the basis of the willful and wanton exception of section 2-202 of
the Tort Immunity Act. Although plaintiff's count IV violates
our civil practice rules, which require that each separate cause
of action be stated in a separate count (735 ILCS 5/2-603(b)
(West 1994)), the defendants made no motion to strike (see 735
ILCS 5/2-615 (West 1994)). Moreover, notwithstanding this
technical defect, the complaint will not be dismissed unless it
fails to state any cause of action, even if it is not the cause
of action intended by the plaintiff. See Doe, 161 Ill. 2d at
388, 641 N.E.2d at 505.
 Willful and wanton conduct is a statutory exception that
defeats the immunity provided by section 2-202 of the Tort
Immunity Act (745 ILCS 10/2-202 (West 1994)). Doe, 161 Ill. 2d
at 389-90, 641 N.E.2d at 505; Leone, 156 Ill. 2d at 39, 619
N.E.2d at 122; Fatigato v. Village of Olympia Fields, 281 Ill.
App. 3d 347, 666 N.E.2d 732 (1996). Section 2-202 states that a
"public employee is not liable for his act or omission in the
execution or enforcement of any law unless such act or omission
constitutes willful and wanton conduct." The Act defines willful
and wanton conduct as "a course of action which shows an actual
or deliberate intention to cause harm or which, if not
intentional, shows an utter indifference to or conscious
disregard for the safety of others or their property." 745 ILCS
10/1-210 (West 1994). Willful and wanton conduct consists of
more that mere inadvertence, incompetence, or unskillfulness. 
Geimer v. Chicago Park District, 272 Ill. App. 3d 629, 650 N.E.2d
585 (1995). While the question of whether conduct is "willful
and wanton" is ultimately a question of fact for the jury
(Fatigato, 281 Ill. App. 3d 347, 666 N.E.2d 732), the court must
first determine as a matter of law whether the plaintiff has
alleged sufficient facts such that a jury question concerning the
willful and wanton nature of the defendants' conduct is created. 
E.g., Doe, 161 Ill. 2d 374, 641 N.E.2d 498; Geimer, 272 Ill. App.
3d 629, 650 N.E.2d 585.
 We believe that the plaintiff has not alleged sufficient
facts to present a jury question as to whether the conduct of
Brogan and the John Doe defendants was willful and wanton. As
noted above, the allegations of count IV of the complaint, which
must be taken as true for purposes of the motion to dismiss,
alleged that the defendants knew of Bauman's violent
propensities; viewed the physical altercation between Bauman and
the plaintiff when they arrived on the scene; separated Bauman
and the plaintiff; heard Bauman's threats of causing physical
harm to the plaintiff; and "detained" the plaintiff and
questioned him while he was standing in an area close to Bauman. 
These factual allegations show that the defendants knew of the
risk of harm posed by Bauman; that notwithstanding that
knowledge, they questioned the plaintiff as he stood in an area
in close proximity to Bauman; and that they failed to protect the
plaintiff from Bauman's attack. Even if this alleged conduct
could be sufficient to support a contention of negligence, it
cannot reasonably support a contention that the defendants acted
in utter indifference or conscious disregard for the plaintiff's
safety. See 745 ILCS 10/1-210 (West 1994)); Doe, 162 Ill. 2d at
390-91, 641 N.E.2d at 506 (willful and wanton conduct alleged if
a rational trier of fact could ever find that the officers'
conduct showed an utter indifference or conscious disregard for
the plaintiff's safety). Here, the defendants were not
indifferent to the plaintiff's safety. They had not abandoned
the plaintiff or left him unprotected. See Gammon v.
Edwardsville Community Unit School District No. 7, 82 Ill. App.
3d 586, 403 N.E.2d 43 (1980) (judgement n.o.v. in favor of
defendant overturned; question of fact for jury existed as to
whether school counselor exhibited willful and wanton conduct in
releasing combative student who resumed fight immediately
thereafter). Rather, immediately prior to the occurrence, the
defendants stopped the altercation, separated the combatants, and
attempted to question them. At the time the plaintiff was
injured, the defendants were investigating the matter. These
actions do not show indifference or willful and wanton conduct
such that the dismissal of plaintiff's action based upon willful
and wanton conduct is affirmed.
 III. Section 1983 Claims
 A. Deprivation of Liberty
 The plaintiff next argues that his complaint stated a
section 1983 cause of action (42 U.S.C. 1983 (1990)) against
Brogan for deprivation of his liberty interests protected by the
due process clause of the Fourteenth Amendment (U.S. Const.,
amend. XIV).
 The Fourteenth Amendment due process clause guarantees a
right to be free from unjustified intrusions on personal
security. Ingraham v. Wright, 430 U.S. 651, 672-74, 51 L. Ed. 2d
711, 97 S. Ct. 1401 (1977). See White v. Rochford, 592 F.2d 381,
387 (7th Cir. 1979) (Tone, J., concurring) stating,
 "The right to personal security can hardly consist only
 of freedom from direct bodily harm and exclude what
 will often be more important, freedom from unnecessary
 and unjustified exposure to physical danger or to
 injury to health."
 Under certain circumstances, the failure of a police officer to
intervene and protect a person's personal security renders him
culpable under section 1983. Yang v. Hardin, 37 F.3d 282 (7th
Cir. 1994) (failure to intervene to prevent continued abuse of
arrestee); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989)
(failure to provide for the physical security of female
automobile passenger after arresting driver and impounding the
vehicle); White, 592 F.2d 381 (leaving children unattended in a
car parked on the highway after arresting their uncle). While
mere negligence or lack of due care by the officer will not
trigger the protections of the Fourteenth Amendment (Daniels v.
Williams, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S.Ct. 662 (1986);
Davidson v. Cannon, 474 U.S. 344, 88 L. Ed. 2d 677, 106 S. Ct.
668 (1986)), a deliberate indifference to a person's interest in
personal security could trigger those protections. Zarnes v.
Rhodes, 64 F.3d 285 (7th Cir. 1995); Murphy v. Walker, 51 F.3d
714 (7th Cir. 1995); Wood, 879 F.2d at 588; Hayes v. City of
Chicago, 230 Ill. App. 3d 603, 595 N.E.2d 144 (1992). Gross
negligence is not sufficient; the conduct must be reckless, that
is, " 'when it reflects complete indifference to risk -- when the
actor does not care whether the other person lives or dies,
despite knowing that there is a significant risk of death.' " 
Seibring v. Parcell's Inc., 178 Ill. App. 3d 62, 73, 532 N.E.2d
1335, 1342 (1988) quoting Archie v. City of Racine, 847 F.2d
1211, 1219 (7th Cir. 1988). Allegations that a government actor
"should have known" are not sufficient to support a due process
claim. Zarnes, 64 F.3d 285 (dismissing allegations of gross
negligence). See McGill v. Duckworth, 944 F.2d 344 (7th Cir.
1991) (to establish due process claim, plaintiff must prove
actual knowledge of risks; proof that official should have known
is not enough).
 For the reasons we earlier found that the plaintiff has
failed to allege willful and wanton conduct, we also find that he
has not alleged a deliberate or reckless indifference to
plaintiff's liberty and personal security interests. In count V
of his complaint, the plaintiff alleged that Brogan deprived him
of his "liberty interests in bodily integrity" without due
process of law. The plaintiff alleged that Brogan knew or should
have known of Bauman's violent propensities, knew or should have
known that Bauman had become involved in a violent altercation
with the plaintiff, and knew or should have known that Bauman was
intoxicated and was continuing to threaten plaintiff with
violence and injury. As in count IV, the plaintiff alleged in
count V that Brogan "detained" the plaintiff and "restricted
[his] ability to visually monitor [Bauman]"; "detained and
restricted the Plaintiff in such a manner as to prevent the
Plaintiff from physically defending himself in the event of a
further attack"; and "detained Plaintiff and conducted a police
interrogation in such close proximity to [Bauman] under
circumstances where the Plaintiff was vulnerable to an imminent
attach [sic] by Bauman."
 Plaintiff's allegations as to what Brogan should have known
are insufficient to support his section 1983 claim. See Zarnes,
64 F.3d 285. Count V of plaintiff's complaint also is
insufficient because it does not allege any standard of conduct
exhibited by Brogan nor does it allege facts showing that
Brogan's conduct amounted to a deliberate indifference to the
risk of harm posed by Bauman. Generally, deliberate indifference
has been established by actions amounting to complete abandonment
or complete failure to intervene or act on behalf of the
plaintiff. See, e.g., Yang, 37 F.3d 282 (failure to intervene to
prevent further beating by fellow officers); Wood, 879 F.2d 583
(abandonment); White, 592 F.2d 381 (abandonment); Riddle v.
Innskeep, 675 F. Supp. 1153 (N.D. Ind. 1987) (failure to remove
plaintiff's attacker from juvenile rehabilitation program). 
Here, Brogan is alleged to have been involved in separating
Bauman and the plaintiff, detaining the plaintiff for
questioning, and conducting an examination of the plaintiff in an
area in close proximity to Bauman amidst Bauman's threats against
the plaintiff. Since we have held that such conduct cannot
reasonably be considered to be willful and wanton, which is
defined by the tort immunity statute as an utter indifference or
conscious disregard to the safety of another (745 ILCS 10/1-210
(West 1994)), we similarly conclude that it cannot support a
contention of deliberate indifference as required under section
1983.
 B. Access to the Courts
 Plaintiff's final argument on appeal is that count VI of his
complaint stated a cause of action against Brogan under section
1983 for denial or impairment of his right of access to the
courts.
 The right of access to the courts is constitutionally
protected; and conduct under color of law which interferes with
that right gives rise to a cause of action under section 1983. 
Vasquez v. Hernandez, 60 F.3d 325 (7th Cir. 1995); McKay v.
Hammock, 730 F.2d 1367 (10th Cir. 1984). See Barrett v. United
States, 798 F.2d 565 (2nd Cir. 1986) (unconstitutional
deprivation of a cause of action occurs when governmental
officials thwart vindication of a claim). When, for example,
police officers conceal or obscure important facts about a crime
from its victim, rendering hollow the right to seek redress,
constitutional rights are abridged. Vasquez, 60 F.3d at 328. 
Not every act of deception in connection with judicial
proceedings is actionable, however. Bell v. City of Milwaukee,
746 F.2d 1205, 1266 (7th Cir. 1984). To prevail on a claim for
denial of access to the courts, the plaintiff must show that the
concealment concerned crucial and essential information (Hossman
v. Spradlin, 812 F.2d 1019 (7th Cir. 1987) (per curiam)) and that
the defendant's actions resulted in some prejudice to pending or
contemplated litigation (Miller v. Fairman, 872 F. Supp. 498
(N.D. Ill. 1994); Stone-El v. Fairman, 864 F. Supp. 807 (N.D.
Ill. 1994)). The plaintiff must allege that he was prevented
from pursuing an action or that the value of such action was
reduced by the concealment. Vasquez, 60 F.3d at 329.
 Here, the plaintiff's complaint alleged that defendants
deprived him of his right of access to the courts to seek
criminal and civil remedies by: threatening plaintiff with
arrest if he persisted in pressing criminal charges against
Bauman; refusing or failing to identify witnesses to Bauman's
attack; refusing or failing to prepare "official police incident
reports"; and refusing to call a higher ranking police officer to
the scene of the occurrence or to the hospital where the
plaintiff was taken after the occurrence. The complaint also
alleged that Brogan additionally violated plaintiff's right of
access by instructing various officers to not file written
reports or disclose information concerning the incident.
 Initially we note that the defendants could not deprive the
plaintiff of his right to seek criminal redress against Bauman. 
It is the State's Attorney, not police officers, who "commence[s]
and prosecute[s] all actions, suits, indictments and
prosecutions, civil and criminal." 55 ILCS 5/3-9005(a)(1) (West
1994). With respect to plaintiff's right to seek civil redress,
we note that the plaintiff is pursuing those remedies in counts I
through III of the instant complaint. However, the fact that the
plaintiff is pursuing his civil remedies against Bauman would not
in and of itself require the dismissal of plaintiff's section
1983 action. As noted in Vasquez, the right to seek redress is
abridged if police officers conceal or obscure important facts
about a crime. 60 F.3d at 328 ("when police officers conceal or
obscure important facts about a crime from its victims [they]
render[] hollow the right to seek redress"). See also Bell, 746
F.2d 1205 (cover-up and conspiracy by police department in
defense of fellow officers during prior civil litigation);
Barrett, 798 F.2d 565 (concealment of violations by federal
government and officials and inducing false testimony during
prior wrongful death action). Here, the plaintiff's allegations
create the inference that a concealment occurred based upon
defendants' refusal to identify witnesses to Bauman's attack and
refusal to prepare "incident reports," and based upon Brogan's
instruction to the officers under his command to not file those
reports or disclose that information. Missing from the
complaint, however, is an allegation that the withheld
information was crucial and essential to plaintiff's litigation
against Bauman. Also missing from complaint is an allegation
that the defendants' actions substantially affected plaintiff's
ability to recover against Bauman. See Vasquez, 60 F.3d at 329
(dismissal of access to the courts claim where plaintiff did not
allege reduction in value). Stone-El, 864 F. Supp. at 809 (to
establish denial of