**Ruben MENDEZ, and Elizabeth Mendez, a Minor Through Ruben MENDEZ, Her Father and Natural Guardian, Plaintiffs,**

v.

**Robert RUTHERFORD, et al., Defendants.**

**No. 86 C 5687.**

United States District Court, N.D. Illinois, E.D.

Dec. 23, 1986.

Order Feb. 13, 1987.

Eliot Zinger, Chicago, Ill., for plaintiffs.

James J. Ryan, Judson Miner, Corp. Counsel, City of Chicago, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

Plaintiff Ruben Mendez ("Ruben") and his minor daughter, plaintiff Elizabeth Mendez ("Elizabeth"), bring this 42 U.S.C. § 1983 action against defendants Robert Rutherford and Dean Angelo, individually and as Chicago police officers, on the basis of events surrounding Ruben's arrest on April 10, 1985. Currently before the court is the motion of defendants to dismiss parts of the complaint. For the reasons below, the motion is denied in part and granted in part.

■ As it must on a motion to dismiss, the court takes all factual allegations of the complaint as true. Certain factual allegations not appearing in the complaint were presented in plaintiff's memorandum opposing the motion to dismiss. Plaintiffs have asked for leave to amend their complaint to include these allegations. Although the court does not approve of piecemeal construction of complaints, in this case given the swiftness with which these facts were brought to the court's attention and defendants' apparent lack of opposition to the granting of leave to amend, leave is granted and the facts are included in this discussion. On April 10, 1985, Ruben was driving his family to his home on West Shakespeare in Chicago, Illinois. While attempting to park his car in his backyard, Rutherford, a Chicago police officer, approached Ruben and told him to move his car. Elizabeth, who was three years old at the time, was also in the car. After Rutherford made this request, Rutherford and Angelo then, for no just cause and without provocation, pulled Ruben out of his car by his hair, threw him up against a garage, then onto the ground, and then handcuffed and brutally and savagely beat him while Elizabeth watched and cried. Ruben pleaded with defendants that his daughter was

in the car, to which one defendant responded, "I don't care." Ruben was beaten for about fifteen minutes, while handcuffed, and while one defendant repeatedly shoved a police flashlight into plaintiff's mouth. After arriving at the police station, Ruben was again attacked, searched, battered, and threatened with bodily harm by Angelo.

Subsequent to these events, Ruben was charged with two counts of battery and one count of resisting arrest. He was later found not guilty of these charges in a bench trial on May 12, 1986. As a result of the violence at the time of the arrest, Ruben received emergency medical treatment and further medical and dental treatment. Elizabeth suffered severe emotional trauma as a consequence of her witnessing the defendants' attack on her father.

The complaint consists of two counts. Count I seeks relief for both Ruben and Elizabeth on account of the above events pursuant to 42 U.S.C. §§ 1981 and 1983. The section 1983 claim is predicated on first, fourth, and fourteenth amendment (substantive due process) violations. Count II seeks relief on pendent state law theories for assault, battery, false imprisonment, intentional infliction of emotional distress, and malicious prosecution. The defendants have moved to dismiss Elizabeth's (but not Ruben's) section 1983 claim in Count I. They also move to dismiss the section 1981 claim as to both plaintiffs. Finally, they move to dismiss the pendent state law claims as to both plaintiffs.

### Count I

Plaintiffs have moved this court for leave to amend Count I so as to include allegations of racial animus presently absent from the count. As defendants correctly observe, racial animus is an essential element of a valid 42 U.S.C. § 1981 claim. *Mescall v. Burrus*, 603 F.2d 1266, 1270–71 (7th Cir.1979). Again, the court admonishes plaintiffs to include all of their desired allegations in the amended complaint. With this admonition in mind, leave is granted. Since the amended complaint will cure the defect in the § 1981 claim, the

motion to dismiss that claim is denied without prejudice.

The section 1983 claim for violation of Elizabeth's substantive due process rights is significant.[1] Essentially, the theory underlying this claim is that the emotional distress the defendants recklessly caused Elizabeth to suffer violated her substantive due process rights. Defendants seek to dismiss Elizabeth's section 1983 claim solely because, in their view, "[they] believe that a party cannot make a claim under § 1983 for emotional distress." Def. Br. at 2. This is an inaccurate view of the law. The Seventh Circuit's definitive word on this subject was set forth in *White v. Rochford*, 592 F.2d 381 (7th Cir.1979). In *White*, a § 1983 action, the uncle of two children was arrested for drag racing after his car was stopped by the police on the busy and limited-access Chicago Skyway. After his arrest, the children's uncle pleaded with the officers to take the children to the police station or a phone booth where they could contact their parents. The officers refused to provide any such aid and left the children (including a third child, a cousin) stranded in the abandoned automobile. Because of the extreme cold, the children were forced to leave the car, cross several lanes of traffic, and search for a phone booth. Upon reaching a telephone, they called their mother who in turn called the Chicago police, but again the police department refused to render any assistance. As a result of the experience, it was alleged that the children suffered mental anguish and that one child had to be hospitalized for a week because of asthma.

The Court made two significant pronouncements in *White*. First, "the protections of the Due Process Clause against arbitrary intrusions on personal security includes [sic] both physical and emotional well-being." 592 F.2d at 385 (citing *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). This aspect of *White* continues to receive the Court's approval. *See Crawford v. Garnier*, 719 F.2d 1317, 1324 (7th Cir.1983) (in a section 1983 action,

"personal distress and emotional pain and suffering ... is compensable," citing *White v. Rochford*). The second pronouncement in *White* established the state of mind necessary for a substantive due process violation, the type of violation implicated in *White*. According to the Court:

It is clearly established that although officials may not be held liable for simple negligence, they may be held liable for "gross negligence" or "reckless disregard" for the safety of others. In the case before us the police could not avoid knowing that, absent their assistance, the three children would be subjected to exposure to cold weather and danger from traffic. This indifference in the face of known dangers certainly must constitute gross negligence.

*White*, 592 F.2d at 385 (footnotes omitted).

While these two pronouncements, as will be later explained, establish the validity of Elizabeth's substantive due process claim for emotional distress, this court must determine the vitality of the second pronouncement in light of two recent cases. The first is the Supreme Court case of *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). *Daniels* held that the mere negligence of state officials resulting in the loss of life, liberty or property does not violate the due process clause. *Daniels*, it turns out, does not diminish the authority of *White*. *White* held that *gross negligence* or *reckless disregard* of an individual's interests is sufficient for a violation of the due process clause. *Daniels* specifically reserved judgment on whether these states of mind are sufficient to trigger due process protections, even though mere negligence is not. *See Daniels*, 106 S.Ct. 662, 667 n. 3. Furthermore, *Daniels* involved a claim that the plaintiff was deprived of certain property without procedural due process. It is not clear that *Daniels* applies at all to claimed deprivations of substantive due process protections. *See Daniels*, 106 S.Ct. 677, 677–79 (Stevens, J., concurring in the

---

1. The court assumes that the references in the complaint to the first and fourth amendment violations do not apply to Elizabeth's claims.

judgment). In light of the factual context and legal holding of *Daniels*, *White* appears to be intact.

■ The next case which requires scrutiny is *Jackson v. City of Joliet*, 715 F.2d 1200 (7th Cir.1983) (Posner, J.), *cert. denied*, 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984). In *Jackson*, the decedents accidently drove off a road and the car burst into flames. When the police came on the scene, they made no attempt to determine whether it was occupied and did not call an ambulance. Traffic was directed away from the accident. After the fire was put out, the police noticed the decedents slumped in the front seat of the car. They made no attempt to remove or assist either one but they did call an ambulance. When the ambulance arrived, one decedent, alive at that time, was removed and later died. The other was thought to be dead, and according to a "foolish" rule, the ambulance paramedics could not touch him to see if he was still alive until a coroner was on the scene. When the coroner arrived over an hour later, he was pronounced dead.

> The Court unequivocally held that an attempt by state officers to assist at an accident is not a deprivation of life without due process of law under the Fourteenth Amendment when the attempt fails because of the negligence or even gross negligence of the officers or their superiors, and the accident victim dies.

*Id.* at 1206. In so holding, the Court was careful to distinguish *White*, rather than limit it or overrule it. The difference between *White* and *Jackson* was expressed as follows: in *White* "the arrest *created* the danger to the children; [in *Jackson*] the plaintiffs' decedents were in great danger before the defendants appeared." *Id.* at 1204 (emphasis added). This distinction survives in the Seventh Circuit to this day: When the police arrest or take similar custodial action against an adult, the police are under a duty with respect to any minor children then in the adult's custody, a duty to avoid actions which through gross negligence or reckless disregard harm the children either emotionally or physically. *See, e.g., Ellsworth v. City of Racine*, 774 F.2d 182, 185 (7th Cir.1985) ("The Constitution creates a duty on the part of police officers to protect minor children from immediate hazards after police officers arrest the children's guardian"), *cert. denied*, — U.S. —, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *Walker v. Rowe*, 791 F.2d 507 (7th Cir.) ("When the state arrests the adult having custody of a child, the state had better take care of the child"), *cert. denied*, — U.S. —, 107 S.Ct. 597, 93 L.Ed.2d 597 (1986).

The continued vitality of *White* is further supported by a long line of cases recognizing that the Constitution requires the state to provide individuals with a certain level of affirmative care when (but only when) "the state ha[s] created a custodial or other special relationship" with those individuals. *Jackson v. Byrne*, 738 F.2d 1443, 1447 (7th Cir.1984). *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (state has constitutional duty not to be indifferent to medical needs of prisoners); *Spence v. Staras*, 507 F.2d 554 (7th Cir. 1974) (state mental hospital constitutionally required to protect inmate from known risk of assault); *Byrd v. Brishke*, 466 F.2d 6 (7th Cir.1972) (police officers constitutionally required to render aid to victim who is being beaten by officers' colleagues in their presence). *White*, then, is simply one of many examples of a situation in which the state, by arresting the uncle, created a custodial relationship with the three children accompanying the arrested uncle, and then caused the children emotional harm by failing to exercise the duties it owed the children in that relationship. In *White*, the relationship began with the arrest of the uncle. In *Jackson*, by contrast, no such relationship ever developed. The police in that case never entered into any special relationship with the decedents prior to the car explosion. Therefore, the police had no duty to exercise any special level of care to avert any and all possible consequences of that disaster.

■ With these principles of law now in mind, the court concludes that the section 1983 action on behalf of Elizabeth must not

be dismissed. Unlike *Jackson*, the police already had a special, custodial relationship with Elizabeth *before* the harm occurred. And, unlike *Jackson*, the police then created the harm themselves after the custodial relationship had been established. As to the facts alleged (or to be alleged in an amended complaint) demonstrate, the defendants brutally attacked Ruben while Elizabeth, at the scene, watched and cried. Unquestionably, the defendants knew that Elizabeth was there because Ruben told them that, and of course Elizabeth's crying almost certainly would have independently alerted them to her presence. Once the defendants seized Ruben and took him into their immediate custody, and once they knew of Elizabeth's presence (both of which apparently occurred before the beating), the defendants owed a special duty of care to Elizabeth in their subsequent actions. Those subsequent actions—the vicious attack of Ruben without probable cause in Elizabeth's presence, constituted a reckless disregard for Elizabeth's emotional well being. This, then, under *White*, amounts to a violation of the officers' substantive due process duties toward Elizabeth. Of course, if there was some justification for the use of violent force against Ruben, and the exigencies of the situation required that the force be exerted in Elizabeth's presence, then the actions here might no longer be regarded as reckless disregard for Elizabeth; they might have been necessary. But the complaint alleges just the opposite—that there was no cause for the savagery. Any contrary pleadings would have to come into this case by way of an affirmative defense, and defenses are not now before this court.

▮ In sum, then, because the Seventh Circuit recognizes that a substantive due process violation may occur by way of the defendants' gross negligence or reckless disregard of a custodial plaintiff's interests, because such actions are alleged to have occurred here, and because emotional injuries from such violations are compensa-

ble, Elizabeth's substantive due process claim must not be dismissed.

## Count II

Defendants seek to dismiss the pendent state law claims on the grounds that they are barred by the Illinois Tort Immunity Act.[2] Of course, state law controls the determination of pendent state claims in a federal action. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In the present case, plaintiffs attempt to assert pendent claims of assault, battery, intentional infliction of emotional distress, false imprisonment, and malicious prosecution in Count II. The Illinois Tort Immunity Act, Ill.Rev.Stat., ch. 85, § 8–102 provides:

> Within 1 year from the date that the injury or cause of action ... was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, must serve, either by personal service or by registered or certified mail, return receipt requested, a written notice on the Secretary or Clerk, as the case may be, for the entity against whom or against whose employees the action is contemplated....

Section 8–103 then provides:

> If the notice under § 8–102 is not served as provided therein, any such civil action commenced against a local public entity or against any of its employees ... shall be dismissed....

The parties agree (at least for purposes of this motion) that the cause of action accrued on April 10, 1985, and the complaint here was filed on August 1, 1986. No notice of the action, other than the filing of the complaint, was ever served on the defendants. Under these facts, the notice requirements of the Illinois Act have

2. They also argue that if Elizabeth's federal claims were dismissed, there would be no pendent party jurisdiction over her state claims. Of

course, given the previous discussion, this argument is now moot.

not been timely complied with, but only as to Ruben's, not Elizabeth's, state claims.

■ The Illinois Act has been construed so as to allow the filing of a complaint within one year of a cause of action to satisfy the notice requirement of the Act even though no prior written notice had been served. *Rio v. Edward Hospital,* 120 Ill.App.3d 699, 76 Ill.Dec. 206, 458 N.E.2d 606 (2nd Dist.1983), *aff'd* 104 Ill.2d 354, 84 Ill.Dec. 461, 472 N.E.2d 421 (1984). In this case, however, the complaint was filed more than one year after the cause of action accrued. Therefore, Ruben's state tort claim is necessarily barred. Ruben argues, however, that it is unfair for defendants to expect him to have served notice of an intent to sue prior to the outcome of his criminal trial, held May 12, 1986. In essence, Ruben is arguing for a tolling principle that would justify a delay in giving notice of an intent to sue. Ruben, however, cites no authority for his tolling proposition and this court has found none. Moreover, the language of the notice rule is quite definite: either file your notice within one year or be barred. No tolling possibility is even remotely suggested by the statute for the reasons Ruben has given. Furthermore, the facts from which this civil action arose were all within Ruben's knowledge after the night of April 10, 1985. The legal outcome of the criminal matter did not affect his knowledge of those facts, and such knowledge is all that was necessary to accrue the cause of action.

■ A different result is appropriate as to Elizabeth. Although neither party cites the case, *Girman v. County of Cook,* 103 Ill.App.3d 897, 59 Ill.Dec. 534, 431 N.E.2d 1291 (1st Dist.1981), holds that a plaintiff who brings an action against an Illinois public entity on her own behalf and on behalf of minors, and who fails to file timely notice of the impending tort action as

required by the Illinois Act, is barred from relief. The minors, however, are not. The court embraced "the policy that protects minors from being deprived of an adjudication of their rights through no fault of their own." 59 Ill.Dec. at 537, 431 N.E.2d at 1294. The court also noted that statutes of limitations are generally tolled during a plaintiff's infancy. *Id.* at 535–36, 431 N.E.2d 1292–93. Accordingly, the court held that the tort action could be prosecuted on behalf of the minors, and the minors only, notwithstanding the failure of the adult plaintiff to file the timely notice.

*Girman* controls here. Elizabeth has been at all relevant times a minor, and still is. The one year notice rule, therefore, was tolled as to her. Her filing of the instant lawsuit now constitutes timely notice within the meaning of the Illinois Tort Immunities Act. Count II should therefore not be dismissed as to Elizabeth, but should be dismissed as to Ruben.[3]

### Conclusion

Leave to amend the complaint in accordance with this opinion is granted. The amended complaint must be filed by January 9, 1987. The motion to dismiss Count I as to Elizabeth Mendez is denied. The motion to dismiss Count II as to Elizabeth Mendez is denied, but as to Ruben Mendez it is granted.

It is so ordered.

### ORDER

■ Plaintiff Ruben Mendez moves this court to reconsider its decision of December 23, 1986 dismissing his pendent state claim for malicious prosecution. That prosecution arose out of battery and resisting arrest charges. Plaintiff was found not guilty of those charges in a bench trial on May 12, 1986. On defendants' motion to dismiss, this court dismissed the malicious prosecution claim because of plaintiff's fail-

---

**3.** As Count II is presently drafted, it is unclear which of the allegations of Count I are incorporated in Count II, and which allegations of Count II are pertinent to Elizabeth. For example, the court supposes that the allegations of false arrest and imprisonment are applicable to Ruben only. Accordingly, in its amended com-

plaint, plaintiffs are instructed to clarify this and include only allegations pertinent to Elizabeth. Nothing in this opinion precludes defendants from renewing their motion to dismiss Count II on grounds not raised in the instant motion.

ure to file timely notice of his intent to sue within one year as required by the Illinois Tort Immunity Act.

Plaintiff argues that section 8–102 of the Tort Immunity Act (which though repealed by P.A. 84–1431, Art. 1, § 3, eff. Nov. 25, 1986, was in effect when this action was filed and therefore still applies) requires only that notice be provided within one year of the date the cause of action accrued. This is correct. Further, a cause of action for malicious prosecution does not accrue until the prosecution is terminated in plaintiff's favor. *March v. Cacioppo*, 37 Ill.App.2d 235 (1962). Thus, the cause of action for malicious prosecution in this case accrued on May 12, 1986, and not on the date of arrest, April 10, 1985. The filing of this action on August 1, 1986, therefore satisfied the notice requirement as to the malicious prosecution claim.

Defendants agree with this analysis and have conceded that the malicious prosecution claim is timely. Accordingly, the court alters its December 23 opinion as follows. Plaintiff's pendent state claim for malicious prosecution is timely. Defendants' motion to dismiss that claim is denied and the claim is reinstated.

It is so ordered.