DEBORAH A. SEIBRING, as Adm'r of the Estate of Rodney Seibring, Deceased, *et al.*, Plaintiffs-Appellants, v. PARCELL'S INCORPORATED *et al.*, Defendants-Appellees.

Fourth District   No. 4—88—0516

Opinion filed December 22, 1988.—Modified on denial of rehearing January 31, 1989.

64

Paul R. Wilson, Jr., of Wilson & Lanto, P.C., of Rantoul, for appellants.

Richard T. West, of Follmer & West, of Urbana, for appellees.

JUSTICE LUND delivered the opinion of the court:

This appeal involves the question of whether the actions of two police officers who allegedly caused an individual to drive while intoxicated and be killed in an automobile accident may have somehow violated the constitutional rights of that individual, so that the administrator of his estate, his widow, and his minor child may maintain a section 1983 civil rights action (42 U.S.C. §1983 (1982)) against the police officers and their municipal employer. We affirm the circuit court's dismissal of the counts of plaintiffs' complaint which attempted to state section 1983 causes of action.

The plaintiffs in this action are Deborah A. Seibring, the wife of decedent Rodney Seibring (decedent), individually and in her capacity of administrator of decedent's estate, and Jennifer Seibring, the minor daughter of the decedent. The first two counts of plaintiffs' complaint are dramshop actions against defendants Parcell's Incorporated and Thomas Borbeli, d/b/a The Paxton Bowl, respectively. In a prior appeal, this court held that plaintiffs' dramshop action against Parcell's was not retroactively barred by an amendment of the applicable legislation. (*Seibring v. Parcell's, Inc.* (1987), 151 Ill. App. 3d 1005, 503 N.E.2d 1126.) The record reflects these counts were subsequently dismissed as a result of a settlement of plaintiffs' claims against Parcell's and Borbeli.

Counts III through VIII are directed to defendants City of Paxton (Paxton), and David Isom and Walter Whitehill, who at the relevant

times were police officers employed by the City of Paxton. (Paxton, Isom, and Whitehill are hereinafter referred to as the defendants.) In these counts, plaintiffs attempted to allege State law causes of action. In another previous appeal in this cause, this court held that counts III through VIII do not state causes of action against defendants and affirmed the circuit court's dismissal of these counts with prejudice. This court held, however, that the circuit court improperly denied a motion by plaintiffs for leave to further amend their complaint by adding additional counts based on alleged section 1983 violations. *Seibring v. Parcell's, Inc.* (1987), 159 Ill. App. 3d 676, 512 N.E.2d 394.

Following remandment of this cause to the circuit court, plaintiffs amended their complaint by filing additional counts IX through XIV, based upon defendants' alleged violations of section 1983. (42 U.S.C. §1983 (1982).) Counts IX through XII are directed to defendant City of Paxton; counts XIII and XIV are directed to Whitehill and Isom, respectively.

Counts IX through XII begin with allegations that plaintiff Deborah A. Seibring was granted leave to file an action against all of the defendants in this action and that she brings this action as administrator of the estate of decedent Rodney Seibring, who left surviving him his wife, plaintiff Deborah Seibring, and minor child, Jennifer Seibring, both of whom are still living. These counts further allege (1) that on or about December 22, 1984, Paxton employed Isom and Whitehill as police officers, (2) Paxton is responsible for constitutional violations inflicted upon Seibring and others in violation of section 1983, and (3) under section 1983, Paxton is liable for the misconduct of its employees. These counts continue with allegations that on or about December 22, 1983, Isom and Whitehill responded to a request for assistance at the Paxton Bowl, where they found decedent and Bruce Adwell, who were causing a disturbance. At that time, decedent and Adwell were intoxicated, and Isom and Whitehill knew or should have known of this impairment. Isom and Whitehill then transported decedent and Adwell, along with plaintiff Deborah A. Seibring, to two motor vehicles in the possession of decedent and Adwell. At that time and place, Isom and Whitehill, in their capacities as agents, employees, or servants of Paxton, "caused, allowed or disregarded the possibility that decedent would operate a motor vehicle and fail [*sic*] to take him into custody or insure that he did not operate a motor vehicle." Plaintiffs further alleged that notwithstanding their duties to decedent, Isom and Whitehill, in their aforementioned capacities and as a result of their lack of training, allowed decedent to operate a motor vehicle, caused decedent to operate a motor vehicle, or failed to take

decedent into custody in order to protect his person. As a direct and proximate result of one or more of the foregoing acts or omissions which were done by Isom and Whitehill with conscious indifference or disregard for the safety and well-being of decedent, decedent allegedly operated a motor vehicle and was involved in an automobile accident which resulted in his death. The counts directed to the City of Paxton state, as the bases for plaintiffs' claims of violations of decedent's constitutional rights by Paxton:

"The conduct as alleged above deprived the Plaintiffs' Decedent of his rights as secured under the Fourth, Fifth, and Due Process clause of the Fourteenth Amendments to the United States Constitution. The Defendant CITY OF PAXTON'S failure to properly train, supervise, regulate, discipline, or to otherwise control its employees and the failure to promulgate proper guidelines for the exercise of police powers in this regard and the continued failure to discipline or reprimand employees who do not exercise greater care or prevent accidents by intoxicated persons (to date, these aforesaid named Defendant police officers have not been in any way disciplined or charged with any offense) constitutes an official policy, practice or custom of condoning actions as hereinbefore stated in violation of the constitutional rights of Plaintiffs' Decedent and others and serves to condone the illegal and improper behavior as alleged. Said failures and custom, practice or policy of the CITY OF PAXTON were and are the proximate cause of the injuries and death to the Plaintiffs' Decedent."

The counts directed to the City of Paxton conclude with allegations that by reason of decedent's death, his widow has been deprived of her means of support, and his child has been deprived of decedent's companionship, society, and services.

Count IX requests compensatory damages only, and count X requests both compensatory and punitive damages. Counts XI and XII are identical to counts IX and X, except they contain further allegations that Paxton is required under Illinois law to indemnify its agents.

Counts XIII and XIV directed to Whitehill and Isom, respectively, repeat virtually all of the factual allegations of counts IX through XII. The only significant difference is that instead of alleging liability on the basis of improper training, supervision, discipline, et cetera, these counts allege Isom and Whitehill had duties (1) to use care for decedent's person and otherwise to provide adequate police protection and service to the decedent and others, (2) to prevent harm to decedent,

and (3) to rescue decedent from harm. These counts further allege Whitehill's and Isom's inaction deprived decedent of his fourth amendment, fifth amendment, and due process (fourteenth amendment) rights and that decedent's and plaintiffs' injuries and losses proximately resulted from the officers' inaction.

The defendants filed a motion to dismiss counts IX through XIV of plaintiffs' complaint pursuant to section 2—615 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). The circuit court granted this motion and dismissed these counts with prejudice. Plaintiffs appeal the dismissal of counts IX through XIV.

The plaintiffs' argument on appeal begins with the statement that the circuit court erroneously applied State law concepts of duty in dismissing counts IX through XIV. Plaintiffs argue that the courts of each State applying their own concepts of duty in the context of section 1983 actions violates due process rights in that under such a procedure, the existence or nonexistence of a cause of action is arbitrarily and capriciously determined on the basis of the location where the Federal cause of action is asserted. Plaintiffs further argue applying State law concepts of duty to this type of case would accord citizens of different States differing amounts of police protection in violation of their rights to the equal protection of the laws.

The plaintiffs argue counts IX through XIV state good causes of action for violations of decedent's section 1983 rights. Plaintiffs contend that by alleging the defendants took actions which resulted in decedent being deprived of his life at the instance of a police officer under color of State law, they stated a section 1983 cause of action for violation of the decedent's right not to be deprived of his life without due process of law. The plaintiffs also assert their allegations addressed to Paxton concerning the inadequate training of Isom and Whitehill state a section 1983 cause of action premised on a violation by Paxton of decedent's substantive due process rights of personal security and bodily integrity. In support of this contention, plaintiffs argue that by inadequately training Isom and Whitehill, Paxton was complicit in creating the situation which resulted in the harm to the decedent which was immediately caused by Isom's and Whitehill's failure to protect him.

As a further basis for their argument that defendants' actions violated decedent's rights to personal security and bodily integrity, plaintiffs argue that notice of a situation which could lead to violence establishes the existence of a "special relationship" between a governmental entity and the persons subject to the possibility of violence, regardless of whether a custodial relationship exists between

the governmental entity and those persons. Plaintiffs assert this type of a situation is an exception to the general rule that the due process clause of the fourteenth amendment does not create a judicially enforceable right to a minimum level of governmental services. (See *Jackson v. City of Joliet* (7th Cir. 1983), 715 F.2d 1200, *cert. denied* (1984), 465 U.S. 1049, 79 L. Ed. 2d 720, 104 S. Ct. 1325.) Plaintiffs maintain that leaving individuals with whom a "special relationship" exists unaided, when in need of assistance, violates the due process rights of such individuals. The plaintiffs further state that when under facts such as those here present more than mere negligence on the part of police officers is asserted, a good cause of action for section 1983 violations is stated.

The defendants argue that plaintiffs have not stated what Federal concept of duty they deem applicable to this case and contend that State courts may look to their own decisions in formulating a Federal standard of duty in civil rights actions. The defendants further assert that a "special relationship" for purposes of section 1983 actions should be deemed to exist outside of a prison-like environment only where the State takes custody of a person or propels him into danger, and that counts IX through XIV of plaintiffs' amended complaint contain no such allegations. Furthermore, defendants argue that if a "special relationship" did exist between them and the decedent, the plaintiffs' complaint does not contain any factual allegations (as opposed to conclusions) of reckless conduct on the part of the defendants or allegations that defendants wilfully placed decedent in danger, and thus does not state a section 1983 cause of action against them. In support of this argument, defendants cite *Archie v. City of Racine* (7th Cir. 1988), 847 F.2d 1211, in support of the principle that even gross negligence on the part of a municipality and its employees does not violate the due process clause, but that when the State puts a person in danger, the due process clause requires the State to protect him to the extent of ameliorating the incremental risk.

The defendants also maintain that plaintiffs have not alleged a violation of decedent's right to equal protection of the laws because they have not alleged deliberate discrimination in a vicious or irrational fashion in denying police protection to a class of which decedent was a member. With respect to plaintiffs' due process claims, defendants observe that the fourteenth amendment does not protect against the deprivation of constitutional rights by any person, but protects only against deprivation of rights by the State without due process. Furthermore, defendants contend the due process clause protects individuals only against a State actor's conduct which "shocks the con-

science" or "runs counter to the fundamental notions of fairness," and that section 1983 imposes liability for violations of rights protected by the United States constitution and not for violations of duties arising out of tort law. Defendants assert that it cannot be said that their conduct on the date of the decedent's death "shocked the conscience" or "runs counter to fundamental notions of fairness."

In their reply brief, plaintiffs contend that defendants improperly rely in their brief on proceedings at an evidentiary hearing held prior to the second appeal in this cause. Also, plaintiffs contend there is no requirement for an injured party to have been under the direct and immediate control of the defendants in order for a section 1983 action to accrue. Plaintiffs assert section 1983 actions may be maintained where the conduct complained of results in an intrusion upon a citizen, even though the citizen was not the one directly mistreated by the police (citing *Mendez v. Rutherford* (N.D. Ill. 1987), 655 F. Supp. 115). Also, plaintiffs argue the actions of Isom and Whitehill in transporting decedent to a motor vehicle from a bowling alley where friends were may have, in effect, cut off sources of aid to the decedent. Finally, plaintiffs contend that where a police officer fails to recognize a problem or to "treat a problem" differently than was done in this case, the officer's actions amount to a violation of the injured party's due process rights, which is actionable under section 1983 directly against the municipality which employs the officer.

■■■ Before addressing the merits of the circuit court's dismissal of plaintiffs' complaint, one procedural matter needs to be discussed. In the circuit court proceedings, the defendants stated that their motion to dismiss counts IX through XIV of the plaintiffs' amended complaint was based on section 2—615 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). In their motion to dismiss, defendants did not rely on any evidence adduced at the evidentiary hearing which preceded the second appeal in this cause. The brief which plaintiffs filed in this court does, however, refer to portions of the transcript of that evidentiary hearing, and defendants refer in their brief to portions of the findings of fact which the circuit court made following that evidentiary hearing.

Depositions and other evidentiary material may be considered by the circuit court in ruling on a motion to dismiss pursuant to section 2—619 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—619), but may not be considered in ruling on a section 2—615 motion to dismiss. (See Ill. Ann. Stat., ch. 110, par. 2—619, Historical and Practice Notes, at 662 (Smith-Hurd 1983); *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 450 N.E.2d

1360.) Where a motion to dismiss a complaint does not specify whether it is made pursuant to section 2—615 (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) or section 2—619 (Ill. Rev. Stat. 1987, ch. 110, par. 2—619), the defendant may elect on appeal to have its motion to dismiss regarded as a motion made pursuant to either section. (*Dunn v. Baltimore & Ohio R.R. Co.* (1987), 162 Ill. App. 3d 97, 515 N.E.2d 1027, *appeal allowed* (1988), 119 Ill. 2d 556, 522 N.E.2d 1243.) Here, however, the defendants specified in the circuit court that they moved for dismissal of plaintiffs' complaint pursuant to section 2—615. (Ill. Rev. Stat. 1987, ch. 110, par. 2—615.) Under these circumstances, we hold that all of the parties are bound by the defendants' designation of their motion to dismiss as a section 2—615 motion, and that evidentiary material thus may not be considered by this court in deciding whether the circuit court properly dismissed counts IX through XIV of the plaintiffs' amended complaint. For these reasons, we strike from the briefs of both parties all references to evidence presented at the evidentiary hearing which preceded the second appeal in this cause and all references to the circuit court's findings of fact on the basis of the evidence presented at that hearing.

In considering what decisions to follow in determining whether counts IX through XIV of plaintiffs' complaint state causes of action for section 1983 violations, we note that in ruling on appeals which come before it, this court is obligated to follow only the decisions of the Illinois Supreme Court and of the United States Supreme Court. (See *Agricultural Transportation Association v. Carpentier* (1953), 2 Ill. 2d 19, 116 N.E.2d 863; *People v. Spahr* (1978), 56 Ill. App. 3d 434, 371 N.E.2d 1261.) However, Federal district courts sitting in Illinois must follow the decisions of the United States Court of Appeals for the Seventh Circuit to the extent there are no United States Supreme Court cases on point. (See *United States v. Maggio* (5th Cir. 1975), 514 F.2d 80; *R.J. Williams Co. v. Fort Belknap Housing Authority* (D. Mont. 1981), 509 F. Supp. 933.) For this reason, in cases premised on alleged section 1983 violations as to which there are no pertinent Illinois Supreme Court or United States Supreme Court decisions, we choose to follow Seventh Circuit decisions to the extent they conflict with decisions of Federal courts of appeals for other circuits or Federal district court decisions.

In view of the facts of this case, we find the concepts of duty for purposes of section 1983 actions which have been delineated by the Seventh Circuit adequate for the purpose of determining whether the circuit court properly dismissed counts IX through XIV of the plaintiffs' amended complaint. Therefore, we need not consider the degree

to which courts may rely on State law concepts of duty in determining what types of conduct violate section 1983.

■ The Civil Rights Act of 1871 provides in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. §1983 (1982).

In adjudicating cases involving alleged violations of section 1983, the Seventh Circuit has generally held that the constitutional rights protected by that provision are intended to serve as checks on governmental power rather than to require affirmative acts on the part of the government. According to the Seventh Circuit:

"The Due Process Clause is phrased in the negative. It says that a state shall not 'deprive' residents of life, liberty, or property, save with due process. It does not require the state to furnish residents with property they lack, or ensure that they do not suffer loss at private hands. For seventy years after the adoption of the fourteenth amendment, there was a serious constitutional question whether a state even *could* create a social welfare system of the sort that is common today. We therefore concluded that the Constitution in general, and the Due Process Clause in particular,

'is a charter of negative rather than positive liberties. *** The men who wrote the Bill of Rights were not concerned that Government might do too little for the people but that it might do too much to them. The Fourteenth Amendment, adopted in 1868 at the height of laissez-faire thinking, sought to protect Americans from oppression by state government, not to secure them basic governmental services.'

*Jackson v. City of Joliet*, 715 F.2d at 1208." (Emphasis in original.) *Archie*, 847 F.2d at 1220.

In *Archie*, a fire department dispatcher failed to dispatch an ambulance to assist a woman suffering from emphysema and pneumonia, after receiving two calls for help. Instead, the dispatcher instructed the caller to have the woman breathe into a paper bag. This may have resulted in her death. The Seventh Circuit, sitting in *en banc*, held that the actions complained of did not violate any of the decedent's rights guaranteed by section 1983.

In the course of its opinion, the *Archie* court provided the following examples of the types of conduct which do not give rise to section 1983 liability:

"We held [in *Jackson v. City of Joliet* (7th Cir. 1983), 715 F.2d 1200] that the Due Process Clause did not furnish a remedy to the estate of a person incinerated in his car while a police officer directed traffic around the blaze, not troubling to look for survivors.

A string of cases before and since *** illustrates the point. The state released a madman from confinement and failed to protect someone who, it should have realized, was in special danger; we held in [*Bowers v. DeVito* (7th Cir. 1982), 686 F.2d 616] that the Due Process Clause does not require the state to imprison maniacs or protect its citizens from them. *** When a city's fire fighters walked out, the city retaliated with a lockout and refused to supply equipment to strikers who tried to put out a blaze; two children died; we held in *Jackson v. Byrne* [(7th Cir. 1984), 738 F.2d 1443] that the Due Process Clause does not require a city to provide fire fighting services (even though, we assumed, the city's failure violated state law). When the bodyguards assigned to protect the wife of an officer on the narcotics squad left for the day, the wife was severely beaten by people holding a grudge against the husband, a risk the city well knew (hence the guards); we held on these particular facts in [*Ellsworth v. City of Racine* (7th Cir. 1985), 774 F.2d 182] that the Due Process Clause did not require the city to protect the wife from this known risk. When a state's prison became tense, the administrators conducted business as usual, and in the ensuing riot three guards died and others were gravely wounded; we held in [*Walker v. Rowe* (7th Cir. 1986), 791 F.2d 507] that the Due Process Clause does not require a state to provide its employees with safe working conditions or protect them from murderers. When a social worker suspected that the child's father was beating him, she removed the child from the home, only to be overruled by higher officials implementing a policy of leaving children with their parents; the caseworker neglected continuing signs of abuse, and the father later beat the child into a vegetable; we held in [*DeShaney v. Winnebago County Department of Social Services* (7th Cir. 1987), 812 F.2d 298, *cert. granted* (1988), ___ U.S. ___, 99 L. Ed. 2d 419, 108 S. Ct. 1218] that the Due Process Clause does not ensure that social workers will be competent, even if in-

competence exposes children to grave injury at private hands."
*Archie*, 847 F.2d at 1220-21.

■ The *Archie* court held that even gross negligence on the part of governmental actors cannot form a basis for section 1983 liability. In order to create section 1983 liability, conduct must at least be reckless. In defining recklessness for section 1983 purposes, the *Archie* court stated: "An act is reckless in the pertinent sense when it reflects complete indifference to risk—when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death." *Archie*, 847 F.2d at 1219.

■ The *Archie* court further held that the phrase "special relationship" no longer serves a useful purpose in defining the circumstances in which a section 1983 action will lie. The court stated that this term has become a "magic phrase, a category in which to dump cases when a court would like to afford relief." (*Archie*, 847 F.2d at 1223.) The court stated that instead of section 1983 liability being based in part on the existence of a "special relationship" between the governmental actor and the alleged victim of a section 1983 violation, the applicable principles are: "When the state puts a person in danger, the Due Process Clause requires the state to protect him to the extent of ameliorating the incremental risk. When a state cuts off sources of private aid, it must provide replacement protection." (*Archie*, 847 F.2d at 1223.) In an earlier decision, the Seventh Circuit described the applicable standard of liability somewhat differently by stating, "[t]he State must protect those whom it throws into snake pits, but the state need not guarantee that volunteer snake charmers will not be bitten." *Walker v. Rowe* (7th Cir. 1986), 791 F.2d 507, 511, *cert. denied* (1986), 479 U.S. 994, 93 L. Ed. 2d 597, 107 S. Ct. 597.

■ When considering a section 2—615 motion to dismiss, the pleadings must be liberally construed (Ill. Rev. Stat. 1985, ch. 110, par. 2—603(c)), but are to be construed strictly against the pleader. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976.) Conclusions of the pleader, standing alone, may not be considered in determining whether a complaint states a cause of action. See *Knox College*, 88 Ill. 2d 407, 430 N.E.2d 976; *Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, 407 N.E.2d 156.

■ On the basis of the nonconclusory allegations of the counts of plaintiffs' complaint here at issue, Officers Whitehill and Isom did not deprive decedent of all opportunities to protect his constitutional rights and did not place him in danger. They did not force decedent to drive a car while intoxicated and did not force him to become intoxicated. On the basis of the matters set forth in counts here at issue,

nothing prevented decedent from requesting his wife to drive him home, or calling a cab, or requesting a friend to drive him or his car home. Whitehill and Isom did not throw decedent into a snake pit and deprive him of all means of assistance; rather, for lack of anything to the contrary appearing in the civil rights counts of plaintiffs' complaint decedent had ample available means of staying out of the snake pit called drunk driving. He entered it entirely of his own volition.

Nor can it be said that Isom's and Whitehill's alleged actions amount to the type of reckless or wilful conduct which under Seventh Circuit decisions is essential for a section 1983 action to succeed. (*Archie*, 847 F.2d at 1219.) In leaving the decedent in the presence of his wife and two automobiles, Whitehill and Isom certainly did not demonstrate a complete lack of care as to whether decedent lived or died.

Having concluded that the actions of defendants Whitehill and Isom alleged in counts XIII and XIV did not violate decedent's constitutional rights guaranteed by section 1983, we must necessarily reach the same conclusion with respect to counts IX through XII directed to the City of Paxton. If the actions of police officers do not in themselves violate the constitutional rights of individuals protected by section 1983, it can hardly be said alleged failures to properly train or discipline the officers which resulted in their acting in the manner complained of violated the plaintiffs' section 1983 rights.

An examination of the cases principally relied upon by plaintiffs in support of their contention they stated section 1983 causes of action reveals these cases involved conduct of much greater culpability than that of which plaintiffs complain. In *White v. Rochford* (7th Cir. 1979), 592 F.2d 381, the police arrested the driver of a motor vehicle on the Chicago Skyway and left his two minor nephews and one of their cousins to fend for themselves on a cold October night. In that case, section 1983 liability existed because the State was solely responsible for bringing into being the set of circumstances (the motorist's arrest and removal from the scene of the arrest) which endangered the children. (See *DeShaney*, 812 F.2d 298.) In the present case, the State did not force decedent to become intoxicated, and the State thus did not create the condition which plaintiffs allege was primarily responsible for the decedent's death. The panel opinion of the Seventh Circuit in *Sherrod v. Berry* (7th Cir. 1987), 827 F.2d 195, also relied upon by plaintiffs, was subsequently vacated for the purpose of a rehearing *en banc*. (*Sherrod v. Berry* (7th Cir. 1988), 835 F.2d 1222.) To date the *en banc* opinion has not been filed in that case.

In *Estate of Tittiger* (E.D. Mich. 1988), 678 F. Supp. 177, the decedent allegedly left a party in a highly intoxicated condition. He left

in a car driven by another partygoer after having first placed his bicycle in the automobile because he felt he was too drunk to drive it. A police officer subsequently stopped the car in which the decedent was riding and *directed* the decedent to remove his bicycle from the automobile and ride it home. On his way home, the decedent was struck and killed by an allegedly intoxicated driver while riding his bicycle. In the present case, by contrast, the plaintiffs have not alleged defendants *directed* decedent to drive while intoxicated.

The injured party in *Riddle v. Innskeep* (N.D. Ind. 1987), 675 F. Supp. 1153, was a student at a juvenile rehabilitation center who was severely and permanently injured by another student, whom the plaintiff alleged defendants had improperly failed to recognize as a dangerous person. The court held the question of whether the defendants violated the injured youth's constitutional rights by exhibiting deliberate indifference to the injured youth's safety, in failing to conduct a thorough intake interview of his attacker and in failing to remove the attacker from the program, was an issue for the trier of fact.

In *Williams v. City of Chicago* (N.D. Ill. 1987), 658 F. Supp. 147, the decedent was shot and killed by a police officer. The administrator of the decedent's estate alleged his death was caused in part by the City of Chicago's failure to discipline police officers with a history of violence and the City's failure to train officers for confrontations with mentally ill persons. The court held that these allegations of section 1983 violations were sufficient to survive a motion to dismiss. Finally, in *Mendez v. Rutherford* (N.D. Ill. 1987), 655 F. Supp. 115, the plaintiff alleged he was brutally and savagely beaten by two police officers in the presence of his three-year-old daughter while he was handcuffed, and while one of the police officers repeatedly shoved a flashlight into his mouth. The plaintiff further alleged that after arriving at the police station, he was again searched and threatened with bodily harm. The court held that these allegations stated section 1983 causes of action on behalf of both the plaintiff and his daughter. The present case involves alleged misconduct not nearly as blameworthy as that at issue in *Riddle, Williams,* and *Mendez.*

For the above reasons, the circuit court's dismissal with prejudice of counts IX through XIV of plaintiffs' amended complaint is affirmed.

Affirmed.

McCULLOUGH, P.J., and SPITZ, J., concur.